Edward W. Foristel v. Security National Bank, Savings & Trust Company, Garnishee; Wayne County National Bank, Interpleader, Appellant.—7 S. W. (2d) 997.

Division Two, June 21, 1928.

*Charles M. Polk* and *Joseph Renard* for appellant.

438

*Foristel, Mudd, Blair & Habenicht* and *Harry S. Brooks* for respondent.

BLAIR, J.—Interplea in the Circuit Court of the City of St. Louis for certain property in the hands of garnishee. The jury found for plaintiff, and interpleader appealed from the judgment entered on the verdict. The value of the property in controversy determines our appellate jurisdiction.

To avoid confusion, we will refer to the parties as they were designated in the trial court. Plaintiff instituted suit against Thomas Rubber Company of Wooster, Ohio, and its individual members, to recover the sum of $10,000 and interest. He sued out an attachment against defendants as non-residents and, on August 14, 1924, caused a garnishment to be served on garnishee bank. Garnishee had in its hands at that time a cashier's check for $2562.37 and a trade acceptance of the Lion Tire Corporation of St. Louis for $8900. Garnishee answered that plaintiff contended that said property belonged to defendant Thomas Rubber Company, and that interpleader claimed it as its own property. Thereafter Wayne County Bank of Wooster (interpleader) filed its interplea in the Circuit Court of the City of St. Louis, claiming that it, and not the defendant Thomas Rubber Company, was the owner of said cashier's check and trade acceptance. Plaintiff filed his answer to such interplea, denying that interpleader was the owner of such property and alleging ownership thereof in Thomas Rubber Company et al., defendants in the main suit.

On July 26, 1924, Thomas Rubber Company had shipped to Lion Tire Corporation of St. Louis a carload of automobile tires, including some tire flaps and inner tubes. The sale price was $11,462.37. By the bill of lading said shipment was consigned to the shipper, Thomas Rubber Company, with instructions to notify Lion Tire Corporation. This bill of lading was endorsed in blank by Thomas Rubber Company and attached to a draft drawn upon Lion Tire Corporation in favor of interpleader for $11,462.37 and signed by Thomas Rubber Company. Said draft was payable "on arrival." It was endorsed by the interpleader and sent to garnishee for collection.

In due time the shipment of automobile tires reached St. Louis and Lion Tire Corporation (in accordance with the terms of the letter of transmittal to garnishee by interpleader and subsequent instructions) accepted said shipment and took up the draft with its attached bill of lading, by paying to garnishee the sum of $2562.37 in cash (which garnishee converted into a cashier's check and treated as cash) and by executing the acceptance for $8900. Before garnishee could further comply with its instructions by transmitting the money collected and the acceptance to interpleader, it was served with a garnishment upon the attachment in aid of plaintiff's suit against Thomas Rubber Company.

While error is assigned to the action of the trial court in giving and refusing instructions and in the admission and exclusion of evidence, the main contention of interpleader (appellant) is that the trial court should have directed a verdict in its favor. This contention we will take first, because, if we find that interpleader is correct in its contention, it will be unnecessary to consider alleged procedural errors.

Interpleader contends that "the uncontradicted testimony showed that interpleader had purchased the draft and had become the absolute owner thereof, and of any money or property collected thereon by the Security National Bank, Savings and Trust Company." This contention requires a recital of certain evidence in the case.

Mr. Woods, cashier of interpleader bank, testified, and interpleader offered exhibits to show, that, on the day the shipment of tires to Lion Tire Corporation was made, Thomas Rubber Company delivered to interpleader the above mentioned draft upon Lion Tire Corporation in the sum of $11,462.37, and at the same time delivered to interpleader the bill of lading for said shipment and a trade acceptance with the amount left blank, payable to Thomas Rubber Company, to be signed by Lion Tire Corporation. The entire face of the draft ($11,462.37) was then credited by interpleader to the checking account of Thomas Rubber Company. The records offered by interpleader showed that Thomas Rubber Company issued its checks against said account and that said amount actually was withdrawn and the account considerably overdrawn between July 26, 1924, the date when credit for said draft was extended to the Thomas Rubber Company account, and August 14, 1924, the date when garnishment was served on garnishee.

The general rule is that, when a customer of a bank endorses to it a draft or similar commercial paper and the bank gives the account of such customer credit for the face of the draft and unrestrictedly authorizes such customer to draw checks against such account (in the absence of a showing to the contrary), the title to such draft is transferred to the bank as a matter of law and it is immaterial whether or

not the customer thereafter exercises his right to check out the proceeds of such paper. [Ayres v. Farmers & Merchants Bank, 79 Mo. 421, l. c. 424; Jefferson Bank v. Merchants Refrigerating Co., 236 Mo. 407, l. c. 415, 139 S. W. 545; Hendley v. Globe Refinery Co., American National Bank, Interpleader, 106 Mo. App. 20, l. c. 26, 79 S. W. 1163; Haas v. Kings County Fruit Co. (Mo. App.), 183 S. W. 676; Renfrow Commission Co. v. Northrup Co. (Mo. App.), 222 S. W. 487; May v. Bank of Hughesville (Mo. App.), 291 S. W. 170, l. c. 171; Cairo National Bank v. Blanton Co. (Mo. App.), 287 S. W. 839, l. c. 840; Bank of Buchanan County v. Gordon (Mo. App.), 250 S. W. 648, l. c. 649.] When such state of facts appears from the uncontradicted evidence in a case, it is the duty of the trial court to direct a verdict instead of submitting the question of transfer of title to the jury. [Bank v. Refrigerating Co., supra; Hendley v. Globe Refinery Co., supra; Renfrow Commission Co. v. Northrup Co., supra.]

Plaintiff contends that, under Gannon v. Gas Company, 145 Mo. 502, and Cochrane v. Bank, 198 Mo. App. 619, l. c. 626, 201 S. W. 572, the credibility of the witnesses establishing the foregoing facts was for the jury, although the testimony of such witnesses was not contradicted. But in this case the proof establishing such facts did not depend upon oral testimony. Those facts were established by the written instruments and the records of interpleader, which plaintiff did not attempt to impeach or discredit in any way.

Plaintiff contends that there were facts from which the jury might have found and must be presumed to have found that interpleader was the mere agent of Thomas Rubber Company, the defendant, for the collection of the draft and that interpleader did not own the proceeds thereof. He cites Cochrane v. Bank, supra; Townsend Wholesale Grocery Company v. Chamberlain Canning Co. (Mo. App.), 277 S. W. 958; Hoffman v. National Bank of St. Louis, 211 Mo. App. 643, 249 S. W. 168; Brigance v. Bank of Cooter, 200 S. W. 668, in support of his contention.

In the Cochrane case the proof rested quite largely in oral testimony. The bank at first charged the drafts back to the defendant in the main case and, after notice of the garnishment and at the request of said defendant, released the deposit thus applied to its debt. The court commented on the fact that this distinguished the case from the cases of Haas v. Fruit Company and Bank v. Refrigerating Company, above cited, the authority and correctness of which was evidently recognized.

In the Townsend case the cashier of interpleader bank testified that defendant had sufficient funds on hand to enable the bank to charge back and collect the draft for which it had given defendant credit. The bank did not do so and its cashier admitted that his

bank was interpleading in the garnishment proceedings merely to keep defendant from being held. The case seems to have been decided on the ground that defendant was primarily liable to interpleader on the draft. There is no discussion in the case of the effect of the endorsement or delivery of the draft of interpleader and the crediting on the face thereof to defendant's account, subject to check, which facts, in the absence of a different understanding, are held in so many cases to consummate transfer of title to commercial paper.

The Hoffman case is of no value to plaintiff. The opinion clearly discloses that garnishee bank was the collection agent of the defendant in the main case and that the fund belonged to such defendants and that the Illinois Bank, through which defendants transmitted the draft for collection, made no claim to the fund. Defendants were not given credit on their checking account for the face of the draft. The facts are entirely different from those in the case at bar.

In the Brigance case, an agent drew drafts on his principal with bill of lading attached, payable to defendant for grain purchased from plaintiff. Defendant called up the agent's principal, a grain company, and was assured that the drafts would be paid. Defendant thereupon placed the amount of the drafts to the agent's credit and he drew his check in favor of plaintiff. Plaintiff deposited this check with defendant, who placed the same to his credit. Two of the drafts were dishonored and plaintiff gave his checks to cover the same and later sued the bank for the money thus paid by him and obtained judgment, which the Springfield Court of Appeals affirmed. Plaintiff claimed that he advanced the money to the defendant bank because it was short of funds and that it was agreed that the money advanced was to be repaid.

The right result appears to have been reached in the Brigance case. The draft, the face value of which was placed to the credit of the purchaser's agent, was neither drawn nor endorsed by plaintiff. The mere fact that he accepted a check out of the deposit created by the proceeds of such draft before he would deliver his grain to the agent did not make plaintiff responsible for the collection of the drafts drawn by said agent, to which he was not a party. No special agreement to be responsible for the collection of the draft appears to have been made. Hence, plaintiff was not precluded from recovering back money paid over to the bank, especially as the jury could have found that defendant bank agreed to repay plaintiff therefor. The correct result seems to have been reached by the Court of Appeals, but the facts are so different from those in the case at bar that the case affords no support to plaintiff's contention.

Plaintiff makes much of the fact that interpleader cashier claims to have purchased the draft (including as part of the proceeds there-

of the trade acceptance), although neither he nor any other of interpleader's officers had any acquaintance whatever with Lion Tire Corporation, the drawee, nor any of its officers, and had no knowledge of the financial responsibility of said company, other than a letter from some bank which stated that the Lion Tire Corporation would pay its acceptances. The fact that such acceptance was made payable to Thomas Rubber Company and was not endorsed to interpleader is also pointed to as indicating that interpleader did not in fact purchase the draft and was not entitled to its proceeds as owner thereof. Interpleader cashier was not permitted to testify as to the course of dealing between his bank and the Thomas Rubber Company on previous transactions of like character, when trade acceptances were said to have been endorsed after the draft had been collected. Such testimony might have explained, consistently with interpleader's claim of ownership, the fact that said trade acceptance was not endorsed to interpleader in the first instance.

A consideration strongly tending to support the interpleader's contention that it was the purchaser of the draft and its proceeds and not a mere collecting agent is the fact that it permitted the Thomas Rubber Company to take credit for the full face of the draft and to check out such credit when interpleader might have been compelled to carry the trade acceptance in a sum as great as $8962.37. It might well be argued from the fact that full credit was thus given that the transaction was necessarily a purchase. If interpleader had been merely a collection agent for Thomas Rubber Company and the trade acceptance, when executed by the Tire Corporation, was to be the property of Thomas Rubber Company, interpleader would not likely have given the Rubber Company credit in advance for more than just the cash expected to be realized on the draft.

But, under the authorities above cited, upon which interpleader relies and which we regard as controlling, title to the draft and its proceeds passed to interpleader as a matter of law, from the uncontroverted facts that said draft was drawn by Thomas Rubber Company in interpleader's favor and that interpleader gave Thomas Rubber Company credit for the full amount on its checking account and permitted said Rubber Company to withdraw such credit without any restrictions whatever. It therefore makes no difference about the circumstances above mentioned, unless they were such as to impeach the transactions, as shown by the records of interpleader offered in evidence and by the draft itself. Clearly those circumstances were not of such impeaching character. [Hendley v. Globe Refinery Co., supra, l. c. 26.]

The trial court should have directed a verdict for interpleader at the close of all the evidence when plaintiff had offered no evidence tending to impeach or destroy the effect of the written evi-

dence offered by interpleader. It therefore becomes our duty to reverse the judgment and to remand the case to the trial court, with directions to set aside the verdict of the jury and to enter judgment in that court in favor of interpleader in accordance with the prayer of its interplea.

It is so ordered. All concur.