NATIONAL CITY BANK OF ST. LOUIS v. MACON CREAMERY COMPANY, Appellant.—46 S. W. (2d) 127.

Division One, February 11, 1932.

*Dan R. Hughes* and *John R. Hughes* for appellant.

*Jeffries, Simpson & Plummer* for respondent.

FERGUSON, C.—The plaintiff, National City Bank of St. Louis, a corporation, instituted this action in the Circuit Court of Macon County against defendant, The Macon Creamery Company, a corporation, seeking to recover upon two drafts drawn by the creamery company on the Kroger Grocery and Baking Company of St. Louis, Missouri.

The drafts were payable to the Farmers Trust Company of Macon, or order, at sight. The petition is in two counts. The draft sued upon in the first count, dated August 6, 1927, was in the amount of $3933, while the second count is based upon a draft dated August 9, 1927, in the amount of $3488.40. Upon a trial before the court, a jury being waived, the finding and judgment of the court was for the plaintiff on both counts of the petition for the principal sum of said drafts, with interest thereon in the aggregate amount of $7903.08, from which judgment the defendant appealed.

The Farmers Trust Company was engaged in a general banking business at Macon, Missouri, where the defendant creamery company was located. In the year 1925 the creamery company became a customer and depositor of the trust company, and that relationship continued until the trust company was closed and its affairs and assets placed under the control of the Commissioner of Finance on August 10, 1927. At the time the creamery company began to do business with the trust company the president of the creamery company informed the president of the trust company that the creamery company carried on an extensive business with the Kroger company in St. Louis, shipping its products to that company and drawing drafts on it for the purchase price thereof. It was agreed that the trust company would accept these drafts as a deposit by the creamery company, give immediate credit therefor to the creamery company's account, that the creamery company would be permitted to immediately draw checks thereon, that if the drafts were not paid upon presentment same might be charged against the creamery company's account and that at any time the account was not sufficient to take care of charges against it the creamery company would deposit sufficient funds to meet such charges. On cross-examination of the president of the trust company, who appeared as a witness for defendant, he testified as follows:

"Q. The final agreement between you and Mr. Miller (the president of the creamery company) was that these drafts drawn on the Kroger people were to be deposited along with other items that he might bring to the bank to the Macon Creamery Company's account and that was done? A. Yes, sir.

"Q. And it was agreed at that time that Mr. Miller was to have unlimited right to check upon them and if he over checked at any time or any of the drafts wasn't paid he would make it good? A. Yes, sir; he was to make any good, of course. *Any draft; any check.*

"Q. And he was given the right to check upon that account and he did do that, exercise that right? A. Yes, sir."

On cross-examination Mr. Miller, the president of the creamery company, testified in reference to the indorsement and deposit of checks and drafts with the trust company:

"Q. Your understanding and agreement with Mr. Phillips (the president of the Trust Company) in the event *any of these items* were dishonored or not paid you would make them good to the bank? A. Sure.

"Q. And your arrangement was the same with any other draft or any other check as it was with the Kroger drafts? A. Yes, sir."

Thereupon a course of dealing between the creamery company and the trust company was entered upon which continued, as we have noted, without interruption until the trust company was closed

in August 1927. When the creamery company made a shipment of its products to the Kroger Company it would draw a draft for the amount of the sale price thereof payable to the trust company, indorse the draft in blank and deposit same with the trust company as an ordinary deposit. The drafts were listed upon a deposit slip with sundry other items, as checks, currency and cash. The total amount of all the items constituted one deposit, which deposit was thereupon entered upon the pass book of the creamery company and credited to its account. An unlimited and unrestricted right to immediately check against such credit was accorded to the creamery company, which right it exercised, and in some instances overdrew its account. The trust company kept a book or register wherein all items accepted by it for collection only were entered, but none of the drafts or other items indorsed and deposited by the creamery company were ever entered on this record, but were received, accepted and treated by the trust company as ordinary cash deposits and immediately credited in full to the account of the creamery company, which was given the right to immediately draw thereon. The drafts sued upon were drawn, indorsed and deposited by the creamery company in the usual manner. Each of the drafts sued upon was an item in a deposit made up of various items, and the deposits of which these drafts were a part were immediately credited to the account of the creamery company pursuant to the long continued course of dealing between the creamery company and the trust company. During the entire time the creamery company carried on its banking business at and with the trust company the Kroger drafts deposited by it with the trust company were indorsed and forwarded by the trust company, by mail, to the plaintiff bank in St. Louis, Missouri, with which the trust company carried an active account. Upon receipt of the drafts bearing the indorsement of the trust company the plaintiff bank would immediately credit same, together with other items transmitted at the same time, as one deposit to the account of the trust company. Pursuant to an understanding and course of dealing between the trust company and plaintiff bank the deposits so transmitted were treated and credited as cash deposits against which the trust company was entitled to immediately draw and which right the trust company exercised. The drafts sued upon were indorsed and transmitted by the trust company, with other items, to plaintiff bank for collection and deposit, and the deposits, of which these drafts were a part, were immediately credited to the account of the trust company with plaintiff bank in the usual manner and the account was thereafter drawn upon by the trust company. The drafts sued upon were presented to the Kroger Company for payment, but as the shipments in payment for which they were drawn had not at the time been received that company requested that the drafts be

held until the shipments arrived. Thereafter and after the trust company closed the defendant creamery company notified and requested the Kroger Company not to pay the two drafts and pursuant thereto the Kroger Company refused payment when the drafts were again presented for payment. As it was admitted that the drafts were dishonored at the request of the drawer no question is made as to the failure of the plaintiff bank to give the drawer notice of dishonor.

Defendant in its answer to each count of the petition denied: that plaintiff was the owner or purchaser of the draft sued upon; that the draft was sold or assigned to the trust company, except for collection, and that title thereto passed to either the trust company or plaintiff, and alleged that the creamery company had an agreement with the trust company that it would draw drafts payable to the order of the trust company which the trust company would accept for collection only, but that the trust company would immediately credit the account of the defendant company in the amount of said drafts and that defendant would be permitted to draw checks against such amount so credited and if any such drafts were not paid by the drawee the defendant would reimburse the trust company or the amount thereof should be charged against defendant's account and that the drafts involved in this action were drawn by defendant and deposited with the trust company pursuant to said agreement.

The only assignment of error which appellant urges relates to the action of the court in overruling its motion for a directed finding in the nature of a demurrer to the evidence, and therefore the sole question involved in this appeal is the sufficiency of the evidence to support the finding made by the court, sitting as a jury, in favor of plaintiff. Appellant's position seems to be that the legal result of the agreement between it and the trust company in reference to drafts to be drawn and deposited by it and the mode of dealing pursuant thereto, as shown by the evidence, was merely a convenient arrangement for collection of the drafts with the trust company acting as its agent for that purpose, that title to the drafts did not pass to either the trust company or plaintiff, that plaintiff cannot therefore maintain this action and that the court should so declare as a matter of law.

The evidence in this case clearly shows that under the agreement and course of dealing appellant drew the drafts payable to the order of the trust company and indorsed and deposited them for immediate credit and thereupon appellant's account with the trust company was credited for the whole amount thereof as a cash deposit and a like credit was given on appellant's pass book against which credit appellant had a right to immediately draw and during a long course of dealing did draw. Under such circumstances the drafts became

the property of the trust company and title thereto passed to the trust company. [Bullene v. Coates, 79 Mo. 426.] In Ayres v. Farmers & Merchants Bank, 79 Mo. 421, the holder of a check indorsed and deposited same to the credit of his account with the bank. The bank placed the check to the credit of the depositor with the right to immediately draw for the amount thereof. It was held that the title to the check passed to the bank so that the depositor could not afterward claim the paper and that it was immaterial that if the check was not paid the bank had a right to charge it back. The rule announced in the Ayres case is reaffirmed in Flannery v. Coates, 80 Mo. 444. The Ayres case is cited, followed and approved in Foristel v. Security National Bank, Savings & Trust Co. (Mo. Sup.), 7 S. W. (2d) 997, where this court said:

"The general rule is that, when a customer of a bank indorses to it a draft or similar commercial paper and the bank gives the account of such customer credit for the face of the draft and unrestrictedly authorizes such customer to draw checks against such account (in the absence of a showing to the contrary), the title to such draft is transferred to the bank as a matter of law and it is immaterial whether or not the customer thereafter exercises his right to check out the proceeds of such paper. [Ayres v. Farmers' & Merchants' Bank, 79 Mo. 421, l. c. 424, 49 Am. Rep. 235; Jefferson Bank v. Merchants' Refrigerating Co., 236 Mo. 407, l. c. 415, 139 S. W. 545; Hendley v. Globe Refinery Co., American National Bank, Interpleader, 106 Mo. App. 20, l. c. 26, 79 S. W. 1163; Haas v. Kings County Fruit Co. (Mo. App.), 183 S. W. 676; Renfrow Commission Co. v. Northrup Co. (Mo. App.), 222 S. W. 487; May v. Bank of Hughesville (Mo. App.), 291 S. W. 170, l. c. 171; Cairo National Bank v. Blanton Co. (Mo. App.), 287 S. W. 839, l. c. 840; Bank of Buchanan County v. Gordon (Mo. App.), 250 S. W. 648, l. c. 649.] When such state of facts appears from the uncontradicted evidence in a case, it is the duty of the trial court to direct a verdict instead of submitting the question of transfer of title to the jury. [Bank v. Refrigerating Co., supra; Hendley v. Globe Refinery Co., supra; Renfrow Commission Co. v. Northrup Co., supra.]"

Upon an application of the rule announced in the Foristel case and the Ayres case to the facts in this case the finding made by the trial court would seem to follow. But says appellant conceding the general rule to be as declared in the Foristel case that, "when a customer of a bank indorses to it a draft or similar commercial paper and the bank gives the account of such customer credit for the face of the draft and unrestrictedly authorizes such customer to draw checks against such account (in the absence of a showing to the contrary) the title to such draft is transferred to the bank as a matter of law," nevertheless the testimony in this case concerning an agree-

ment between it and the trust company that in the event drafts drawn and deposited by it were dishonored the trust company should have the right to charge such drafts against its account and if the account at such time was insufficient to meet such charge it would fully reimburse the trust company was such "a showing to the contrary" that it cannot be held herein that title to the drafts passed as a matter of law, but that the intention of the parties in reference thereto, arrived at from the evidence, must govern, and that the evidence allows but one reasonable conclusion, that being that the drafts were placed with the trust company for collection only and therefore the trust company did not become the owner of the drafts and title thereto did not pass to it. However the intention of the parties, as indicated by their agreement and their subsequent acts, conduct and mode and manner of dealing, shown by the evidence, was a question of fact for the trial court as the trier of the facts, and if by according to plaintiff (respondent) the benefit of the testimony, and all reasonable inferences therefrom, most favorable to the maintenance of its claim against appellant there is substantial evidence in the record to support the finding of the trial court, the judgment of that court must be affirmed.

That part of the agreement or understanding had between appellant and the trust company, at the time appellant became a customer of and depositor with the trust company, giving the trust company the right to charge back against appellant's account any drafts drawn, indorsed and deposited by it which were dishonored and if the account at such time should be insufficient to meet such charge then appellant would reimburse the trust company may reasonably be construed to have been merely a recognition by the parties of the right of recourse which the law gives the indorsee against the indorsor and in effect a waiver of formal notice of dishonor, thereby affording the trust company an expeditious method of enforcing its rights as an indorsee. It will be noted that the president of the appellant company testified that all checks received by appellant and all drafts drawn by it were indorsed and deposited in the same manner and that the "understanding and agreement" with the trust company was that "in the event *any* of these items" so indorsed and deposited were dishonored the appellant "would make them good to the bank" and that "the arrangement was the same with any other draft or any other check as it was with the Kroger drafts." The evidence shows that appellant frequently and from time to time indorsed and deposited a large number of checks and drafts the aggregate amount of which was placed to its credit with the right to draw against the credit and it does not seem reasonable to conclude that because the president of the trust company and the president of appellant company had an understanding that appellant as indorsor

of such checks and drafts would assume and by the method agreed upon discharge the liability which the law imposed upon it as an indorsor, in the event such paper was dishonored by the person primarily liable, each and every check, draft and item of commercial paper so indorsed and deposited by appellant at the trust company was placed with it for collection only with title thereto and control thereof remaining in appellant. The arrangement or understanding was entirely consistent with banking transactions and custom and with the intention that title to the drafts and checks indorsed and deposited, in the manner shown by the evidence, should pass to the trust company in conformity with the general rule of law announced in the authorities hereinbefore referred to. The Kroger drafts were handled and treated by the parties in the same way and manner as other commercial paper and items indorsed and deposited by appellant. Instead of precluding every other reasonable inference and conclusion except that the Kroger drafts were placed with the trust company and accepted by it for collection only as appellant's agent with title thereto and ownership and control thereof remaining in appellant, we think the testimony is ample to warrant the inference, made by the trial court, that title to the drafts passed to the trust company. The Kroger drafts were made payable to the order of the trust company and were deposited by a regular depositor and customer in the ordinary course of business as items in a general deposit which was immediately credited to the general account of the depositor and both under the terms of the agreement and the course of dealing between the parties became immediately subject to its checks with the unrestricted right, exercised by it, to draw against the account even to the full amount credited. The giving of the credit with the right allowed appellant by the agreement and course of dealing to immediately draw against it was practically the same as paying the money to appellant on the draft and receiving the cash again on deposit. The drafts were at no time handled by the trust company in the manner in which it received, entered and handled items accepted by it for collection only. These facts are inconsistent with the idea that the trust company received the drafts as a mere agent for collection. A finding that the title passed to the trust company is not inconsistent with the agreement that the trust company should have the right to charge back a draft or any other item of commercial paper in the event it was dishonored. As we have said, the agreement in that respect may well be inferred to have been simply a convenient method adopted and arranged by the parties for the protection of the trust company whereby it could collect from the drawer and indorsor in case a draft was dishonored and while it may be considered as a circumstance bearing on the question of title it cannot be deemed as controlling on that question. The action of the

trust company in accepting the drafts, indorsed and deposited by appellant, crediting appellant's account therewith and allowing it the right to immediately draw thereon and the acts and conduct of the appellant in the course of the transactions is sufficient to support the finding that it was the intention of the parties that title to and ownership of the drafts pass to the trust company. In 7 Corpus Juris, page 635, it is said: ''Where checks or drafts are indorsed and deposited and are accepted as cash they become the property of the bank, and the bank becomes a debtor of the depositor in the amount of such check [or draft] even though it is understood that the bank has the right to charge back the amount if the paper proves uncollectible.'' In this connection we quote further from 7 Corpus Juris at page 604: ''With few exceptions, all checks which are credited to depositors are entered with the express or implied right to charge them back if they are not paid. One view of this right to retransfer is that it is inconsistent with the bank's ownership of title, even though advances are made on them. . . . The other view is that the right to retransfer does not affect the bank's title to the paper, every indorsee having recourse to his indorser in the event of not receiving payment from the party primarily liable.'' The same rule, we assume, applies to drafts indorsed and deposited as were the drafts in the instant case. The latter of the two views stated is taken and announced by Ayres v. Bank, supra, and the cases following the rule announced therein and Cottondale Planting Co. v. Diehlstadt Bank, 220 Mo. App. 265, 286 S. W. 425; Hendley v. Globe Refinery Co., 106 Mo. App. 20, 79 S. W. 1163, and Dymock v. Midland National Bank, 67 Mo. App. 97.

The evidence shows that the trust company maintained an active and continuing account with the plaintiff and regularly forwarded and transmitted drafts, checks and items of commercial paper for deposit to the credit of its account. These items were indorsed: ''Pay any bank or banker or order. Previous indorsements guaranteed.'' This form of indorsement was stamped upon the paper. The Kroger drafts drawn by appellants and other items were so indorsed and forwarded by the trust company to the plaintiff bank for deposit. Appellant says that such indorsement is restrictive for collection only, does not pass title to the instrument to the holder and therefore plaintiff was not entitled to maintain this action. This indorsement, standing alone, has been held to be restrictive. [Citizens' Trust Company v. Ward, 195 Mo. App. 223, 190 S. W. 364; Bank of Indian Territory v. First National Bank, 109 Mo. App. 665, 83 S. W. 537.] However, the authorities are to the effect that though the indorsement be restrictive if there is an understanding and a mode or custom of dealing between the parties whereby the indorser obtains immediate credit in its deposit account with the indorsee

bank with the right given to immediately, and prior to the collection of the items, check against same, title to the paper passes to the indorsee bank, and under the rule laid down in the Foristel case this would seem to be true as a matter of law. While ordinarily a restrictive indorsement for collection does not carry title to the paper "yet, when such indorsement is made in pursuance of an understanding and of dealings between the parties, whereby the check is taken, credited and treated as a cash deposit subject to check, the ordinary rule does not obtain." [Midland National Bank v. Roll, 60 Mo. App. 585. And see C. J. 602, 603.] "If paper be deposited in or forwarded to a bank for collection, and in pursuance of the usual mode of dealing, the bank places the amount to the credit of the depositor, and the latter thereupon draws, or is entitled to draw, against the same as cash, this works a transfer of title so that the depositor cannot afterward claim the paper, and it is immaterial that if the paper is not paid the bank has the right to charge it back. Ayres v. Bank, 79 Mo. 421, followed and re-affirmed." [Flannery v. Coates, 80 Mo. 444.] "It has been repeatedly held that, if a draft is deposited in a bank for collection, and, notwithstanding such restrictive indorsement, such bank immediately places the amount of the draft to the credit of the depositor, and the depositor thereupon draws, or is entitled to draw, against the same as cash, or if such draft is forwarded to a bank for collection, and advances are made on the darft by the second bank to the first, a transfer of title is effected." [Cairo National Bank v. Blanton Co. (Mo. App.), 287 S. W. 839. There is substantial evidence in the record tending to show that pursuant to the understanding and a long existing and established course and custom of dealing between plaintiff bank and the trust company plaintiff bank gave the trust company's deposit account credit with the aggregate amount of all items of commercial paper included in one remittance immediately upon receipt of same, and the trust company was then entitled to immediately draw against the credit and unrestrictedly exercised that right. The drafts sued upon were handled in this usual and customary manner of dealing. Plaintiff's cashier testified that the trust company drew on its account after the deposits which included the drafts sued upon were credited to its account in the amount of $12,994.43. We think the evidence sufficient to support the finding of the trial court that title passed to plaintiff.

The judgment of the trial court is affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.