FARMERS EXCHANGE BANK OF MARSHFIELD, by the Commissioner of Finance, v. FARM & HOME SAVINGS & LOAN ASSOCIATION, Appellant.—61 S. W. (2d) 717.

Division One, June 12, 1933.

*J. E. Haymes; Allen & Allen* and *Ewing, Ewing & Ewing* for appellant.

*F. W. Barrett* for respondent.

*Furrington & Curtis* and *Paul W. Barrett, amici curiae.*

STURGIS, C.—This case comes to this court from the Springfield Court of Appeals on the dissent of one of the judges of that court who deemed the majority opinion affirming the judgment of the trial court for plaintiff to be in conflict with certain decisions of the other Courts of Appeals. This gives us the same jurisdiction as would an appeal direct to this court. The suit is on an ordinary bank check payable to the order of L. H. Garst for $1973.75 drawn on the Nevada Trust Company, a banking institution at Nevada, Missouri. It was drawn and signed by the defendant, Farm & Home Savings & Loan Association of Nevada, Missouri, a building and loan association of this State, and was given to L. H. Garst, the payee, in settlement of a loan made to him. The plaintiff bank came into possession and claim of ownership of this check in this manner: L. H. Garst, the payee of the check, lived at Marshfield, Missouri, was engaged in business there, and was and had been for several years a customer of the plaintiff bank of that town. On receiving the check in question, dated June 5, 1930, from the defendant, Farm & Home Savings & Loan Association at Nevada, drawn on a bank of that city, Mr. Garst at once took the same to the plaintiff bank at his home town, indorsed the same in blank, that is, merely wrote his name on the back of the check, and handed it over the counter to the plaintiff bank, together with a deposit slip or ticket made out by himself dated June 6, 1930, to be signed and which was signed by plaintiff bank and returned to him as evidence of the deposit. This deposit slip had written or printed thereon the words ''All checks credited subject to final payment. Please indorse and list each check separately.'' There were appropriate blank spaces on this slip to show the amount deposited of currency, silver and gold, which spaces in this case were left blank, and then followed: ''Checks as follows: Farm & Home, $1973.75.'' The word ''Duplicate'' was written or printed thereon and just preceding the plaintiff bank's signature at the bottom were the words: ''This slip is a duplicate of our memorandum of money or checks you have left in our care.''

This is all that took place at the time and the question presented by this appeal is whether the title and ownership of this check passed to and vested in the plaintiff bank, or did such bank receive it for collection as the collecting agent of the depositor, L. H. Garst, sub-

ject to certain rights growing out of that agency, but with the general title to the check and its proceeds remaining in the payee Garst. In other words, was the relationship between these parties created by this transaction that of debtor and creditor or that of agency. As having some bearing on this question, it was shown that the plaintiff bank at once, under date of June 6, 1930, placed on its books to depositor Garst's credit the full amount of the check, $1973.75. At the beginning of that day Garst's credit balance in plaintiff bank was $314.66, which was increased by 'the amount of this check, $1973.75, and checks of Garst were cashed to the amount of $327.33, so that at the end of the day's business Garst had a balance of $1961.08 or $12.67 less than the deposited check. On the next day the plaintiff bank cashed two small checks of Garst amounting to $9.11, leaving his balance in the plaintiff bank $1951.97 or $21.78 less than the amount of the deposited check in question. The plaintiff bank then on June 9, 1930, failed to open for business and was placed in the hands of the Commissioner of Finance for liquidation, by whom it is represented in this litigation. As we have said, the plaintiff bank gave Garst credit for the full amount of this check, $1973.75, at the time of its deposit and allowed him to check out $21.78 of that amount and presumably would have allowed him to check further against this balance had the bank not failed and its assets passed to the liquidating officer. What further happened was that the plaintiff bank had on the day this check was deposited by Garst forwarded same to its correspondent, the McDaniel National Bank at Springfield, with the indorsement thereon "Pay to the order of any Bank, Banker or Trust Co. All Prior Indorsements Guaranteed," and the Springfield Bank, in turn, indorsed this check "Pay to the order of First National Bank, Kansas City, Mo.," and on June 7, 1930, forwarded same to that bank. This Kansas City bank, in turn, forwarded the check for collection to Nevada, Missouri, but with what indorsement or to what institution as collecting agent is not shown. In any event, the check in question was presented to the Nevada Trust Company, on whom it was drawn, and payment was refused on June 10, 1930. Same was duly protested and returned to plaintiff bank with the notation thereon "Protested for non-payment this 10th day of June, 1930." What really happened was that on June 9, 1930, the original owner and depositor of this check, L. H. Garst, learned of the failure of the plaintiff bank and at once notified the drawee of the check, Nevada Trust Company, not to pay the check, and its refusal to pay was based on this instruction. It is apparent, however, that if L. H. Garst, the payee, had passed the ownership and title of this check to the plaintiff bank by his indorsement and deposit of same in the plaintiff bank on June 6, 1930, he had no interest therein and could not stop payment on same.

The previous course of business between the depositor Garst and plaintiff bank throws little, if any, light on the question of whether the bank took this check as absolute purchaser or for collection. The account of Garst with plaintiff bank for two years previous to this time showed a rather small but very active account. On three or four occasions Garst was allowed to overdraw his account for small amounts and not for a very long time. It is not shown that he ever previously deposited checks as so much cash or how checks deposited by him, if any, had been previously handled. For ought that is shown, all his previous deposits in plaintiff bank were of cash.

On behalf of plaintiff, it was shown that after the liquidating officer took charge of plaintiff's assets on June 9, 1930, this check was there and listed and inventoried as an asset of the plaintiff bank; that L. H. Garst never made any claim against the bank for the money represented by this check and that the time for doing so had expired; that the bank records did not show that this check was ever charged back to Garst, but that the bank's books showed a balance of $1951.97 to his credit. We know, of course, that the bank's books could not well have been changed or any transactions had except in an official way after the bank's failure.

As to any "understanding" in regard to the way this check was received or was to be handled, L. H. Garst testified that he made out the deposit slip himself and handed the check over to plaintiff bank and "had no special understanding with anyone about it." He did not say whether he knew or not that the amount of the check was at once credited to his account subject to his right to check on same, but said that he did not then know that, except for this credit, the checks he drew thereon would have slightly overdrawn his account. The then cashier of the plaintiff bank testified that he handled this deposit and transmitted same to the McDaniel National Bank at Springfield for collection. Asked if he had any "understanding" with Mr. Garst that this item was received for collection only, he said: "There wasn't anything said about it. It was handled in the regular way. I presume he had a little book (pass book?). He was given credit for it on the ledger sheet."

On this evidence the case was submitted to the trial court, sitting as a jury, and the court found for plaintiff for the amount of the check and entered judgment accordingly. The defendant has appealed.

By its petition the plaintiff claims to be the owner of this check, having acquired it by reason of the payee indorsing it in blank and delivering it to plaintiff and receiving credit therefor with the right to check against the same. By its answer the defendant admits the execution of said check, but denies that plaintiff bank was or is the holder of same for value; avers that said check was received by plain-

tiff bank for collection only; that no part of the credit given said Garst by plaintiff was ever withdrawn from said bank by said Garst except the sum of $21.78, which amount was tendered to the plaintiff before this suit was instituted, but which plaintiff refused to accept. The proof showed that defendant had tendered to plaintiff this sum of $21.78 before suit was instituted and plaintiff refused to accept the same; that L. H. Garst had made no claim against plaintiff bank on account of any credit given him.

On behalf of plaintiff, the court declared the law to be that if the check in question was indorsed in blank by L. H. Garst and deposited in the plaintiff bank for credit, and if the plaintiff bank received said check and gave L. H. Garst credit for the same on its books and permitted Garst to draw on said deposit for an amount named and gave Garst the right to draw on the balance of said credit, then the plaintiff bank became the purchaser and owner of said check, and the court's verdict must be for plaintiff; that if, on the other hand, the check was deposited in the plaintiff bank by L. H. Garst for collection only and was accepted and treated by the plaintiff as a collection item only, then the court's verdict must be for the defendant.

Though requested by the defendant, the court refused to declare the law to be that if it found from the evidence that the payee of the check, L. H. Garst, deposited the same in the plaintiff bank in the usual course of business, and there was no agreement other than the deposit itself as to the character of said deposit, then the verdict and finding of the court must be for the defendant, except that the plaintiff is entitled to recover the amount which said Garst was permitted to and did withdraw from such credit.

It is apparent that the trial court rendered judgment for plaintiff on the theory that when the payee of the check, L. H. Garst, deposited such check with his name indorsed thereon in blank in the plaintiff bank, and that bank gave him credit on its books for the amount of the check as so much cash with the right to check against the same, the plaintiff bank became at once the absolute owner of such check as a matter of law. The defendant, maker of the check, justifies its action in refusing to pay same and defends this action by plaintiff based thereon on the ground that the payee Garst deposited the check in the plaintiff bank for collection, and, as plaintiff was only the agent of the payee Garst in making collection, he had a right to stop payment on same, and consequently that plaintiff cannot recover as owner thereof. The facts themselves are not in dispute, though different inferences in some respects might possibly be drawn from such facts by the trier of the facts. Th trial court found for plaintiff and the majority opinion in the Court of Appeals, 52 S. W. (2d) 608, makes this statement of the applicable law: "A long and

unbroken line of decisions in this State have established the rule beyond any further question that when a check, draft, or similar commercial paper is indorsed and deposited by a customer in a bank, which gives such depositor credit therefor on his account with unrestricted authority to draw checks against said account, unless there be some other agreement or understanding, the title to such check, draft, or similar commercial paper is *ipso facto* transferred to the bank as a matter of law. [Ayres v. Farmers' & Merchants' Bank, 79 Mo. 421, 424, 49 Am. Rep. 235; Foristel v. Security National Bank, 320 Mo. 436, 7 S. W. (2d) 997; National City Bank v. Macon Creamery Co., 329 Mo. 639, 46 S. W. (2d) 127, 129.]'' We agree that the cases cited, as well as many other cases in this State, so hold.

In the Foristel case, supra, where an interpleader bank claimed the absolute ownership of a draft indorsed and deposited by one of its customers, to whom the bank had given full credit with the right to check against same, this court said: ''The general rule is that, when a customer of a bank indorses to it a draft or similar commercial paper and the bank gives the account of such customer credit for the face of the draft and unrestrictedly authorizes such customer to draw checks against such account (in the absence of a showing to the contrary), the title to such draft is transferred to the bank as a matter of law and it is immaterial whether or not the customer thereafter exercises his right to check out the proceeds of such paper. . . . When such state of facts appears from the uncontradicted evidence in a case, it is the duty of the trial court to direct a verdict instead of submitting the question of transfer of title to the jury.'' The court cites a large number of Missouri cases so holding and distinguishes other Missouri cases seemingly to the contrary.

The recent case of National City Bank v. Macon Creamery Co., 329 Mo. 639, 46 S. W. (2d) 127, was a suit on a draft against the drawer of same by the second bank in the chain of title. The draft was deposited by the maker (defendant), drawn on the Macon Trust Company, under an agreement ''that the trust company would accept these drafts as a deposit by the creamery company, give immediate credit therefor to the creamery company's account; that the creamery company would be permitted to immediately draw checks thereon; that, if the drafts were not paid on presentment, same might be charged against the creamery company's account.'' The Macon Trust Company, in turn, indorsed such draft to the plaintiff bank, using the words ''Pay any bank or banker or order. Previous indorsements guaranteed.'' Then the Macon Trust Company, the bank first receiving the check for collection and deposit, failed and the defendant maker stopped payment thereon. As to the title of the draft vesting in the Macon Trust Company, the court quoted with

approval the statement of the "general rule" from the Foristel case, with the remark, "The giving of the credit with the right allowed appellant (defendant) by the agreement and course of dealing to immediately draw against it was practically the same as paying the money to appellant on the draft and receiving the cash again on deposit." As to the title of the draft passing to and vesting in the second bank (plaintiff), the court said: "However, the authorities are to the effect that, though the indorsement be restrictive, if there is an understanding and a mode or custom of dealing between the parties whereby the indorser obtains immediate credit in its deposit account with the indorsee bank with the right given to immediately, and, prior to the collection of the items, check against same, title to the paper passes to the indorsee bank, and under the rule laid down in the Foristel case, supra, this would seem to be true as a matter of law."

It thus appears from these and many other decisions in this State that the rule of law has heretofore obtained in this State to the effect that when a customer of a bank indorses for deposit therein a check, draft, or like commercial paper, and the bank at once gives the account of such depositor credit for the face value with the unrestricted right to draw checks against same, then, *in the absence of an agreement to the contrary*, the *title* to such check is transferred to the bank of deposit as a matter of law and it becomes the owner of same and not the collection agent of the depositor. And when such are the facts, the further fact that there is an agreement, express or implied, that if such check is not paid the bank has a right to charge same back against the depositor's account, or that the depositor will make it good, is not sufficient to show "an agreement to the contrary." Nor, as against such facts, does a restricted indorsement such as "Pay any bank or banker" or "For deposit and collection," or words of similar import, have the effect of showing "an agreement to the contrary." National City Bank v. Macon Creamery Co., supra, which quotes with approval from Cairo National Bank v. Blanton Co. (Mo. App.), 287 S. W. 839, 840.

We may also say that while under our former decisions the real intention of the parties is the ultimate test of whether title passes absolutely to the bank of deposit or it takes same for collection as agent, yet the fact that full credit is given the depositor with the right to check against same raises a strong presumption that title passes, and such presumption will prevail unless same is overcome by a clear agreement to the contrary, to be shown by the depositor.

■ Such was the law in this State prior to and when our Legislature in 1929, Laws 1929, page 205, enacted what is designated as the "Bank Collection Code," now Sections 5565 to 5575 inclusive,

Revised Statutes 1929. The third section of this Code, Section 5567, Revised Statutes 1929, provides: "Except as otherwise provided by agreement and except as to *subsequent holders* of a negotiable instrument payable to bearer or indorsed specially or in blank, *where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection* and each subsequent collecting bank shall be sub-agent of the depositor but shall be authorized to follow the instructions of its immediate forwarding bank *and any credit given by such agent or sub-agent bank therefor shall be revocable until such time as the proceeds are received in actual money* or an unconditional credit given on the books of another bank, which such agent has requested or accepted. *Where any such bank allows any revocable credit for an item to be withdrawn such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn.*" The italics show the essential parts. Other provisions of this Bank Collection Code will be noticed later. The question for our decision is whether or not the enactment of this Bank Collection Code changed the law as it had theretofore been declared by our courts.

We take notice that this Bank Collection Code has been enacted in a large number of states with only minor changes and in some cases, as in this State, with the omission of two or three sections of the complete Code as prepared but which have no bearing on the question we are considering. We may also state historically that this Bank Collection Code was formulated and its enactment suggested to the various states by the American Bankers' Association, a nationwide organization. Its evidence purpose is to secure a uniform Code of laws and rules in the various states governing the subject of bank collections, after the fashion of uniform laws on the subject of negotiable instruments, bills of lading, etc. This implies and it is a fact well known, especially to lawyers and bankers, that there was much uncertainty and conflicting court decisions in the various states on questions growing out of and relating to bank collections. The purpose of such Code is to bring about uniformity, or nearly so, in the law as administered in the different states. It also necessarily follows that this Code is not only a codification of existing laws and decisions, but where conflicts existed changes in the law were necessary to secure uniformity.

In 3 Ruling Case Law, section 152, page 524, this is said: "But, where a check indorsed in blank and deposited without any definite understanding as to the way it is to be treated, but is credited by the bank to the depositor as cash, and is so entered upon the depositor's pass book, the question frequently arises whether the title to the

check passes immediately to the bank, or remains in the depositor. Prima facie, according to the weight of authority, the passing to the credit of the depositor, of a check bearing an indorsement not indicating that it was deposited for collection merely, passes the title to the bank. [Ayres v. Farmers' & Merchants' Bank, 79 Mo. 421, 49 Am. Rep. 235, is among the cases cited.] Still, according to the weight of authority, the rule above stated is not an absolute rule, and is prima facie merely, and yields to the intention of the parties, expressed or implied from the circumstances. . . . There are a few cases which deny even that prima facie the title is deemed to have passed to the bank, and hold, on the contrary, that prima facie the title remains in the depositor, and that circumstances indicating a contrary intention are necessary to place the title in the bank.''

A reference to 2 Ruling Case Law, Per. Supp. 821, 822, discloses that the later cases show similar conflicting rulings, the weight of authority being that prima facie the title to a check deposited and credited as cash with the right of the depositor to check against same vests in the bank of deposit, although it is said: ''Some authorities hold that prima facie the title to paper credited to the depositor remains in him, unless an intention to pass title is evidenced by circumstances other than credit to and indorsement by the depositor. [47 L. R. A. (N. S.) 555, 556 note.] . . . The conclusion that title does not pass to the bank is by some cases based largely upon the right of the bank to charge back the credit in case of dishonor of the paper. [11 A. L. R. 1058 note; 42 A. L. R. 952 note.]''

That there existed a conflict of authority on the question of whether the deposit of a check in a bank by the owner or payee indorsed in blank, and the giving of immediate credit to the depositor for the amount thereof on the books of the bank with the unrestricted right of the depositor to check against the same, passes title to the check to the bank of deposit as a matter of law, or whether such bank, in the absence of proof to the contrary, takes the check as collection agent of the depositor, is disclosed by a cursory examination of the authorities. [2 Michie on Banks and Banking, sec. 159, p. 1380.]

This subject of title to checks, drafts, and similar commercial paper deposited by a customer of a bank to his account has been a fruitful source of litigation and varying decisions of different jurisdictions, as will be seen by the extensive collection and review of the authorities in 11 A. L. R. 1043, 1054 and 1060, 16 A. L. R. 1084, 42 A. L. R. 492, and more recently in 68 A. L. R. 725, where it is pointed out that where commercial paper is deposited for collection as shown by the form of indorsement, that is, a restricted indorsement, the general rule is that title does not pass to the bank, but it is pointed out that in this State in Cairo National Bank v. Blanton Co. (Mo.

App.), 287 S. W. 839, it is held that where a draft is deposited and credited as cash and subject to check by the depositor, the title passes. though the indorsement is "for collection." There are also many cases cited in these annotations under the heading, "Rule where there is no agreement that paper is taken for collection" upholding the doctrine that title remains in the depositor. [11 A. L. R. 1054; 68 A. L. R. 730. See Carson v. Federal Reserve Bank, 235 N. Y. Supp. 197; Joppa v. Clark Commission Co. (Ore.), 281 Pac. 834; Hotel Statler Co. v. Girard National Bank, 89 Pa. Super. Ct. 537.] There are also many cases there cited upholding the doctrine that "where there is no definite understanding between the depositor and bank as to the ownership of paper, but the paper is indorsed by an unrestricted indorsement and deposited in the usual course of business with the bank, which gives credit to the depositor for the amount thereof with the right to draw thereon, title passes to the bank." [11 A. L. R. 1060; 68 A. L. R. 731.] This has been the law in this State as shown by the Missouri cases there and here cited, notably the Foristel case, 320 Mo. 436, 7 S. W. (2d) 997.

It is also a matter of common knowledge that banks, while willing to accommodate reliable customers by giving them immediate but revocable credit for deposited checks with the right to cancel the credit or recover back the amount paid thereon in case collection fails, were constantly seeking to counteract the legal decisions of the courts holding that such banks thereby incurred the relation of debtor and creditor by restricting or defining the relationship to be that of agency. This was accomplished in part by recitals on the deposit slip or pass book of the customer to the effect that checks were accepted for collection only or were credited subject to collection, etc., which, however, often proved unavailing.

We know also that the Supreme Court of the United States in June. 1926, handed down its opinion in the case of City of Douglas v. Federal Reserve Bank, 271 U. S. 489, 70 Law Ed. 1051, giving its sanction to the doctrine that "when (commercial) paper is indorsed without restriction by a (bank) depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes the owner of the paper, and in making the collection is not the agent for the depositor." It was further held that the fact that the creditor's pass book had printed therein a recital to the effect that out-of-town items were credited "subject to final payment," did not alter the relationship. as to which the court said: "Without these words the relationship between the plaintiff and the bank was that of indorser and indorsee; and their use here did not vary the legal rights and liabilities incident to that relationship, unless it dispensed with notice of dishonor to the depositor. . . . While there is not entire uniformity of opinion,

the weight of authority supports the view that upon the deposit of paper unrestrictedly indorsed, and credit of the amount to the depositor's account, the bank becomes the owner of the paper, notwithstanding a custom or agreement to charge the paper back to the depositor in the event of dishonor.''

With this background and for the evident purpose of establishing a uniform rule of law in regard to title of checks passing or not passing to banks of deposit, this Bank Collection Code has been enacted in this and many states. Its plain purpose and reading is to establish and preserve an agency relation of the bank receiving the check on deposit, although our courts had gone to the extreme in upholding the doctrine that, prima facie at least, title passed to the bank by the mere fact of the check being indorsed in blank or even restrictedly when full credit was given with the right to check against same. The section of the act above quoted declares that *except or unless otherwise agreed* and except as to subsequent holders of a particular form or indorsement of negotiable paper, where an item is deposited or received for collection, the bank receiving the deposit shall be *agent* of the depositor for its collection, and makes subsequent collecting banks *sub-agents* of the depositor; and further declares that *any credit* given by such agent or sub-agent therefor shall be revocable until such time as actual collection is made. Such act then protects the collecting bank in giving immediate credit to the depositor and allowing same to be checked out before collection is made, in case the check is not finally collected, by giving the collecting bank the rights of an owner to whatever extent it has paid out money on the credit given the depositor. It is declared, however, that the agency relation of the bank of deposit ''shall nevertheless continue'' except that the bank is given the rights of an owner to the extent of protecting it in whatever it has paid out.

This act does not prevent the bank of deposit from purchasing or becoming the owner of the check with or without the right to charge or collect back the amount of same in case of failure to collect, for that comes within the excepting clause ''except as otherwise provided by agreement,'' but the enactment clearly proceeds on the basis of the bank of deposit being the collecting agent of the depositor of the check unless and until it is shown that it has been ''otherwise provided by agreement,'' and this is true notwithstanding credit, which is declared revocable, has been given the depositor for the deposited check and such credit has been allowed to be and has been withdrawn or checked against. The agency relation is not changed except to protect the bank to the extent the credit has been checked against. This is emphasized by making subsequent collecting banks sub-agents of the depositor and not of the bank of deposit. By the fifth section of the Bank Collection Code, Section 5569, Revised Stat-

utes 1929, indorsements "for deposit" or "pay any bank or banker," or equivalent words, are declared to be restrictive indorsements and to indicate an agency relation only. In this respect at least the statute in question changes the rule stated in Cairo National Bank v. Blanton Co. (Mo. App.), 287 S. W. 839, quoted with approval in National City Bank v. Macon Creamery Co., 329 Mo. 639, 46 S. W. (2d) 127, 131, that "notwithstanding such restrictive indorsements," the bank of deposit or a subsequent collecting bank which makes advances on the check or draft becomes the owner thereof. By this same Section 5569, Revised Statutes 1929, it is provided that the depositing of items payable to bearer or indorsed in blank shall not have the effect of changing the relation of agent of the bank of deposit to the depositor except as to subsequent holders without notice, said part of the section reading: "Where a deposited item is payable to bearer or indorsed by the depositor in blank or by special indorsement, the fact that such item is so payable or indorsed shall not change the relation of agent of the bank of deposit to the depositor. but subsequent holders shall have the right to rely on the presumption that the bank of deposit is the owner of the item. The indorsement of an item by the bank of deposit or by any subsequent holder in blank or by special indorsement or its delivery when payable to bearer, shall carry the presumption that the indorsee or transferee is owner provided there is nothing upon the face of the paper or in any prior indorsement to indicate an agency or trustee relation of any prior party."

■ ■ We cannot agree that the adoption of the Bank Collection Code has not changed the rule of law previously existing in this State as to passing title to the bank of deposited checks when credit is at once given to the depositor with the right to check against such credit. This statute establishes the relation of agency in such case and makes the credit so given a revocable one except as to such part of the credit as has actually been withdrawn. Title to the check and its proceeds does not at once pass to the bank in the absence of an agreement to the contrary. It is conceded here that there is no agreement to the contrary, that is, no agreement of sale off the check to the bank other than what is termed an implied agreement from the facts. Such implied agreement, it is argued, arises from the fact that the check was indorsed in blank, deposited in the bank, and credit for same given the depositor at once with the unrestricted right to check against such credit. To hold that there is such an implied agreement of sale from these facts is in the teeth of the statute which declares that the fact of an item being indorsed in blank when deposited shall not change the relation of agent of the bank of deposit to the depositor and that any credit given the depositor shall be a revocable one until the proceeds are received in actual cash;

and further that such agency relation shall continue notwithstanding the bank of deposit shall allow the revocable credit to be withdrawn by the depositor, except that the bank shall have the rights of an owner against prior and subsequent parties to the extent of the amount withdrawn. We cannot give effect to an implied agreement of the sale of the check to the bank, implied, if at all, from the very facts which the statute says shall not change the agency relation.

While we do not find any case directly construing the Bank Collection Code as adopted in the various states, we find two cases which we think uphold the construction we are giving this statute. It appears that in 1927 Minnesota enacted a statute on this same subject similar in its language and purpose to the one under consideration, which reads: "Any bank . . . doing business in this State, in receiving items for deposit or collection, in the absence of a written agreement to the contrary, shall act only as the depositor's collecting agent and shall have no responsibility beyond the exercise of due care. All such items shall be credited subject to final payment in cash or solvent credits. . . . Such bank or correspondent may send items, directly or indirectly, to any bank including the payer, and accept its draft, check, or credit as conditional payment in lieu of cash. It may charge back any item at any time before the final payment whether returned or not." In Schram v. Askegaard, 34 Fed. (2d) 348, the suit was on a check against the maker thereof. The payee of the check had deposited it in the Comstock State Bank, which bank gave the depositor credit for the amount with the right to use such credit and then went into the hands of a receiver before collection was actually made. The depositor (payee of the check) stopped payment on same. An intermediate collecting bank which had received the check and advanced money and credit on the same brought suit thereon, claiming to be the owner as successor in title of the bank of deposit. The court said: "He (plaintiff) brings this suit upon this check against the defendants, upon the theory that, when the treasurer deposited the instrument with the Comstock State Bank he parted with title to it, in consideration of being credited with the amount of it at the time of the deposit, that the plaintiff is now the owner of this check, and is entitled to hold the defendants on the indorsement of the treasurer. Were it not for Chapter 138, Laws of Minnesota 1927 (the statute just quoted), the contention of the plaintiff would have to be sustained under Federal Reserve Bank v. Malloy, 264 U. S. 160, 68 L. Ed. 617, 31 A. L. R. 1261, and City of Douglas v. Federal Reserve Bank, 271 U. S. 489, 70 L. Ed. 1051. . . . It is not claimed that there was any written agreement between the defendants and the Comstock State Bank changing the effect of the statute, and, under the circumstances, it would appear that there was a conclusive presumption that the Comstock State

Bank, when it received this item for deposit, became merely the depositor's collecting agent, that the relation of debtor and creditor never existed between it and the defendants, and that it never owned the check in question."

The State of Florida enacted a statute in 1909 in substance as follows: When a check is deposited in a bank for credit or collection, it shall be considered due diligence in collecting to forward the same on the same day in the regular course of business, and the depositor shall be liable to the bank until actual final payment is received, "and when a bank receives for collection any check, draft, note or other negotiable instrument and forwards the same for collection, as herein provided, it shall' only be liable after actual final payment is received by it, except in case of want of due diligence on its part as aforesaid." Thereafter in the case of Edwards v. Lewis (Fla.), 124 So. 746, the question arose whether the title to a check indorsed and deposited in a bank in that state vested in the bank and created the relation of debtor and creditor. The court referred to the former case of Brown v. People's Bank, 59 Fla. 163, 52 So. 719, 52 L. R. A. (N. S.) 608, wherein it was held that: "Where a check payable in another city was indorsed in blank and deposited with a bank to be credited to the depositor, receipt of the check by the bank prima facie carried title to the bank, and the relation of debtor and creditor was established between the depositor and the bank by the deposit. . . . But the Legislature in 1909 enacted a law that has been brought forward in Section 6834, Compiled General Laws of Florida 1927, as follows: (Quoting the above statute). That legislation was referred to in the Brown v. Bank case, supra, but did not affect it, because the statute was enacted after the institution of the action. As stated in the case just referred to, this statute 'was manifestly designed to change the existing rule.' In the case of Montsdoca v. Highlands Bank & Trust Co., 85 Fla. 158, 95 So. 666, 667, this court . . . stated that the statute above quoted 'makes the bank in which a check is deposited for deposit or collection liable only "after actual final payment is received by it," unless it is negligent in its duty "according to the regular course of business of banks," ' and that the 'statute controls, and the decision in Brown v. People's Bank, supra, is not applicable.' In other words, the statute has changed the rule so that now the relationship of the depositor of commercial paper with his bank of deposit, even though the deposit is not for collection, is in the nature of principal and agent, until such paper has been collected and payment actually received by the bank, in which event the depositor becomes the creditor of his bank, the debtor."

We also think this construction of the statute is in accord with Ozark Fruit Growers' Assn. v. Bank of Aurora (Mo. App.), 52 S.

W. (2d) 430; Bank of Aurora v. Fruit Growers' Union (Mo. App.), 52 S. W. (2d) 574, and Bank of Republic v. Republic State Bank, 328 Mo. 846, 42 S. W. (2d) 27.

We must hold, therefore, that, giving force and effect to this statute, the plaintiff bank did not take title to the check sued on here, but was acting as collecting agent of the depositor, as was the subsequent collecting banks. When the plaintiff bank failed and ceased to be a going concern, as it did do before the collection was actually made, its power to act further in the matter ceased (Brigance v. Bank of Cooter (Mo. App.), 200 S. W. 668; 6 Michie on Banks and Banking, sec. 6, p. 11; sec. 42, p. 52, and sec. 46, p. 68), and such depositor had a right to do as he did in stopping payment on the check. It follows that plaintiff or its liquidating agent has no power to maintain this action.

We may also say in passing that Section 2682, Revised Statutes 1929, a part of the Negotiable Instrument Act, has no application to the facts here. It is conceded that the depositor Garst has tendered and offered to make good his small overdraft in plaintiff bank caused by such bank allowing him to check against the revocable credit given him, and that is all that plaintiff can ask.

The judgment of the trial court is therefore reversed and the cause remanded with directions to enter judgment for defendant in accordance with this opinion, allowing to plaintiff the amount tendered. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.