**HARTFORD ACCIDENT & INDEMNITY CO. v. FEDERAL DEPOSIT INS. CORP.**

**No. 14732.**

United States Court of Appeals
Eighth Circuit.

June 19, 1953.

Roberts P. Elam, St. Louis, Mo., for appellant.

Jacob M. Lashly, St. Louis, Mo. (Paul B. Rava, University, Mo., Lashly, Lashly & Miller, St. Louis, Mo., Norris C. Bakke, Washington, D. C., and John L. Cecil, Washington, D. C., on the brief), for appellee.

Oliver & Oliver, Cape Girardeau, Mo., filed brief of Fidelity & Casualty Co. of New York, amicus curiae.

Limbaugh & Limbaugh, Cape Girardeau, Mo., filed brief of Bank of Altenburg, amicus curiae.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff (appellee), Federal Deposit Insurance Corporation, in an action upon a bond issued by the defendant (appellant), Hartford Accident and Indemnity Company, to the Brazeau Bank, a small bank in the small town of Brazeau, Perry County, Missouri. The bond was dated May 15, 1947, and, so far as pertinent, insured the Bank against "Any loss of property through * * * false pretenses, * * * with or without negligence on the part of any of the Employees [of the Bank]," excluding, however, "Any loss the result of the complete or partial nonpayment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, * * *."

The Brazeau Bank was managed by Serena A. Barber, who had been its cashier for almost twenty-six years and who was also a stockholder. W. J. Schneier, in December, 1950, had a current checking account in the Bank. He had been raised in the Brazeau community, and Miss Barber had known him all of his life. Schneier was one of two partners engaged in the trucking business under the name of H. & F. Truck Service. The partnership had a deposit account with the Bank of Altenburg, located in Altenburg, Missouri, which is about five miles distant from Brazeau.

In the latter part of December, 1950, Schneier caused the Brazeau Bank to accept for deposit and credit to his personal deposit account three checks signed "H. & F. Truck Service, W. J. Schneier," made payable to the order of the Brazeau Bank,

and drawn upon the Bank of Altenburg. The dates and amounts of the three checks were as follows: December 26, 1950, $6,523.96; December 28, 1950, $6,645.29; December 30, 1950, $6,525.87. The checks were sent by the Brazeau Bank to its regular correspondent bank in St. Louis, Missouri, for collection. Before the three checks were presented to the Bank of Altenburg for payment, Schneier had checked out of his personal account in the Brazeau Bank the aggregate amount of the checks.

There were not sufficient funds in the account of H. & F. Truck Service in the Bank of Altenburg to cover any of the checks in suit, and they were dishonored and returned to the Brazeau Bank. No recovery could be had from Schneier. The Brazeau Bank could not survive the loss and was taken over by the plaintiff, Federal Deposit Insurance Corporation, which had insured the deposits in the Bank.

The net loss to the Brazeau Bank as the result of the fraud practiced upon it by Schneier was $18,490.33. The defendant received notice from the Bank by letter on January 25, 1951, that the Bank had sustained losses covered by the bond in suit through the false pretenses of a "check kiter," and that proof of loss would follow. The plaintiff, in May, 1951, furnished proof of loss to the defendant, stating the amount of the loss and how it occurred. On July 23, 1951, the defendant in a letter to the Associate General Counsel of the plaintiff denied liability on the specific ground that the loss did not occur on the premises of the Bank and was therefore not covered. The writer of the letter, however, stated that the defendant was waiving no other defenses it might have.

This action followed. The plaintiff's claim was that the loss was occasioned by the false pretenses of Schneier and was covered by the bond in suit. The plaintiff asked for judgment for the amount of the loss, damages for vexatious refusal to pay, and a reasonable attorney's fee. The defendant in its answer denied liability. At the trial the defendant asserted that the loss was not covered by the bond because the false representations were not made on the Bank premises; that the evidence did not prove that Schneier knew that the partnership checks which he drew on the Bank of Altenburg would not be paid when presented; that the Brazeau Bank should not have sent the checks through regular channels, but should have called the bank on which they were drawn to ascertain whether they would be paid; and that the evidence showed that Schneier, instead of depositing the checks for credit to his account, had, as a matter of Missouri law, procured a loan from the Brazeau Bank, and that the loss from the nonpayment of the checks was therefore a loss resulting from the nonpayment of a loan, within the meaning of the clause of the bond excluding such losses from coverage. The District Court found no merit in any of the defendant's contentions, and entered judgment against it for $18,490.33, the amount of the loss, and, in addition, for $1,849.03 as damages for the defendant's vexatious refusal to pay, and $2,000 as an attorney's fee.

Two questions only are presented for review. 1. Did the loss sustained by the Brazeau Bank result from the nonpayment of a loan within the meaning of the exclusion clause of the bond? 2. Was the District Court justified in finding that the defendant's refusal to pay the loss was vexatious under the applicable statute of Missouri?

Each of these questions is governed by Missouri law. In Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43, this Court said:

"The burden of demonstrating error is upon the Casualty Company. In a case controlled by local law, that burden is a peculiarly heavy one. This Court is not an appellate court of the State of Missouri and establishes no rules of law for that State. We have repeatedly said that, in reviewing doubtful questions of local law, we would not adopt views contrary to those of the trial judge unless convinced of error, and that all that this Court reasonably can be expected to do in such cases is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law. Rus-

sell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker, 8 Cir., 185 F. 2d 311, 315, and cases cited. If a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse, even though we may think the law should be otherwise."

See, also, National Bellas Hess, Inc., v. Kalis, 8 Cir., 191 F.2d 739, 741; Kimble v. Willey, 8 Cir., 204 F.2d 238.

The plaintiff asserts that the contention that the Bank's loss was due to the nonpayment of a loan by Schneier cannot properly be considered because not alleged as a defense in the answer and not raised at the trial until the close of the evidence by a motion of the defendant to dismiss. However, the question was considered and ruled upon by the District Court in its opinion, in which it said, 106 F.Supp. 602, 605:

"Schneier did not get the money on the checks instanter upon presentation of the checks, but took some days to check it out. Defendant urges this circumstance as showing a relationship of debtor and creditor with Schneier and the bank because the Bank of Brazeau permitted Schneier to check on the deposit before the checks cleared. It is also claimed the Bank of Brazeau was Schneier's agent to collect the checks. We are not concerned with the niceties of legal relationship between the bank and Schneier. A creditor or agent may be the victim of loss by false pretense. The bond makes no such exemption. Under no view of the case can we find that the bank intended to extend Schneier a loan or that Schneier sought to make a loan. It is not before us but if it were an issue, it is doubtful if the Bank of Brazeau could legally make a loan for the sum involved. There was no loan made. The intent of the parties must govern. Here Schneier intended to get the bank's funds by the use of the checks. They were the basis of the false pretense. The fact that he did get the money is undisputed. We find he got

the money by virtue of the checks. Without use of the checks he would not have received it."

The argument that the Bank, by crediting the three checks to Schneier's account and permitting him to check against the credit, made him a loan, the nonpayment of which caused the loss, recovery of which is sought, is ingenious, but we think unsound.

■ It is true that, under the Bank Collection Code of Missouri, Section 402.030 RSMo 1949, V.A.M.S., where a bank at once gives credit for deposited checks with the right to check against such credit, the credit given is a revocable one, except as to such part of the credit as has actually been withdrawn by the depositor. Title to the checks deposited does not at once pass to the bank in the absence of an agreement to the contrary. The bank is the agent of the depositor for the collection of the deposited checks, but has the rights of an owner to whatever extent it has paid out money on the credit given the depositor. Farmers' Exchange Bank of Marshfield v. Farm & Home Savings & Loan Ass'n of Missouri, 332 Mo. 1041, 1053–1054, 61 S.W.2d 717, 722, 723; Citizens Fidelity Bank & Trust Co. v. Kilpatrick, Mo.App., 231 S.W.2d 301.

■ Since the Brazeau Bank gave credit to Schneier for the three checks which were ultimately dishonored, and permitted him to check against that credit, and since his withdrawals exhausted the credit, it seems apparent that, under Missouri law, the Bank became the owner of the checks, with recourse against the partnership and Schneier.

■ The fact that Schneier was obligated to reimburse the Bank because of having induced it to accept the worthless checks for credit to his account and to permit him to draw against the credit, did not, in our opinion, make the loss sustained by the Bank a loss resulting from the nonpayment of a loan, within the ordinary meaning of that word as applied to banking or insurance.

It is to be noted that the bond in suit covered loss of property "through robbery, burglary, common-law or statutory larceny,

theft, false pretenses, hold up * * *," etc. Since any one causing a loss within this coverage would necessarily become obligated to reimburse the Bank, it would seem that, under the defendant's theory, the commission of any of these offenses against the Bank would, if successful, result in the offender having procured a loan from the bank, the nonpayment of which caused the loss.

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense." Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416; State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 627, 127 S.W.2d 675, 677.

It is not conceivable to us that any disinterested banker, insurance underwriter, or lawyer would construe the word "loan", as used in the exclusion clause of this indemnity bond, to cover the obligation imposed by law to reimburse a bank for money or credit obtained through the use of worthless checks.

We think the District Court correctly concluded that the loss sustained by the Brazeau Bank was directly caused by false pretenses and was within the coverage of the bond.

The question as to what conduct on the part of an insurer will constitute vexatious refusal to pay a loss within the meaning of the applicable statute of Missouri, Section 375.420, RSMo 1949, V.A.M.S., has been considered by this Court a number of times. Buffalo Ins. Co. of City of Buffalo, N. Y. v. Bommarito, 8 Cir., 42 F.2d 53, 57, 70 A.L.R. 1211; New York Life Ins. Co. v. Calhoun, 8 Cir., 114 F.2d 526, 536–540; Western Fire Ins. Co. v. University City, 8 Cir., 124 F.2d 698, 700–701; Firemen's Ins. Co. of Newark, N. J. v. Smith, 8 Cir., 180 F.2d 371, 378–379. No useful purpose would be served by repeating what has heretofore been said about the problem. The loss here involved occurred in December 1950. The defendant received notice of the loss on January 25, 1951. It was furnished verified proof of loss in May 1951. It denied liability on July 23, 1951, giving a lame specific reason for its denial, one which it later abandoned. The several defenses presented at the trial were not impressive.

The District Judge, who was in a better position to appraise the justification offered by the defendant for its refusal to pay than we are, very evidently thought that the defendant had been grasping at straws to delay or avoid having to pay a loss clearly insured against. While we do not question the sincerity of the assertions of counsel for the defendant that its failure to pay was warranted, we cannot say that the District Court either misconceived or misapplied the law of Missouri in reaching the conclusion that the failure of the defendant to pay the loss was vexatious and that the defendant was legally liable for the penalty and attorney's fees assessed against it.

The plaintiff has asked us to make an additional allowance of attorney's fees to cover the services of its counsel on this appeal. The District Court having allowed a substantial attorney's fee in addition to the ten per cent penalty for vexatious refusal to pay, we are not inclined to add anything more to the judgment than the costs of this appeal.

The judgment is affirmed.