122 N.J. Super. 125 (1972)
299 A.2d 413
JOHN SOLOMON, BERTHA SOLOMON AND EUGENE H. SOLOMON, PLAINTIFFS-APPELLANTS,
v.
CONTINENTAL INSURANCE COMPANY, DITTMAR INSURANCE AGENCY AND ROBERT LUCAS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1972.
Decided December 29, 1972.
*128 Before Judges LEWIS, CARTON and MINTZ.
Mr. Bernard F. Boglioli argued the cause for appellants.
Mr. Marshall Selikoff argued the cause for respondent Continental Insurance Company (Messrs. Lane, Evans & Selikoff, attorneys).
Mr. Leonard Rosenstein argued the cause for respondent Dittmar Insurance Agency (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
Mr. Benjamin Edelstein filed a statement in lieu of brief for respondent Robert Lucas.
The opinion of the Court was delivered by MINTZ, J.A.D.
In this declaratory judgment proceeding plaintiffs sought an adjudication of coverage under a homeowners' policy "Broad Form" issued by defendant Continental Insurance Company (Continental) to John Solomon and Bertha Solomon. Plaintiffs asserted additional claims of equitable estoppel to deny coverage, and reformation, if necessary, of the policy so as to provide coverage, indemnification *129 by Continental for any loss they might sustain through the negligence of Continental's agent, Dittmar Insurance Agency (Dittmar), and indemnification from Dittmar for any loss sustained because of Dittmar's negligence in obtaining the insurance coverage requested by plaintiffs.
Following a nonjury trial the judge found adversely to plaintiffs on all issues. Post-trial motions were made and denied. This appeal ensued.
In 1938 plaintiffs John and Bertha Solomon purchased property located in Howell Township consisting of 16 1/2 acres on which was situated a dwelling, a chicken coop and a hatchery. They used the dwelling for their residence and engaged in chicken farming until 1956. After that, plaintiffs raised corn on the property until 1963 or 1964. Thereafter the property was used by them for residential purposes only.
Plaintiff Eugene Solomon is the son of plaintiffs John and Bertha. He lived on the premises until July 1967, at which time he married and established a separate residence. In 1964, while residing on the premises, Eugene started a gun shop. His gunsmithing activities were conducted in a portion of one of the buildings that was formerly used as a chicken hatchery. This activity began as a hobby. However, in 1967 he grossed approximately $50,000 a year, and netted about $2000 that year from this gunsmithing business, which included the sale of guns, ammunition and shooting clothing. He attributed the small profit margin to the fact that he did most of his dealings with friends and acquaintances. It should be noted that Eugene also had full-time employment elsewhere. Eugene further testified that he had business cards, and stationery with a business letterhead on it  "E.H. Solomon and Shooter Supplies"  but that this stationery was used to procure orders from distributors. He did not otherwise advertise.
On November 12, 1967, four months after Eugene had changed his residence, a fire broke out in the building where Eugene carried on his gunsmithing activities. Robert Lucas *130 was a volunteer firearm fighting the fire. He allegedly was injured as a result of a gunpowder explosion, and filed suit against all plaintiffs seeking recovery for said injuries. This declaratory judgment proceeding was initiated upon Continental's refusal to defend the Solomons in the Lucas litigation.
Originally, plaintiffs John and Bertha Solomon did their insurance business with the Butcher Agency, which was taken over by defendant Dittmar. In 1963 Dittmar, as agent for Fidelity-Phoenix Insurance Company, issued to plaintiffs a homeowners' policy "at the suggestion" of Mr. Dittmar, a corporate officer of Dittmar.
The policy was to expire on October 11, 1966. Prior to that date Mr. and Mrs. Solomon received a letter from Dittmar pointing out that the old policy was about to expire and suggesting increased coverage. Mrs. Solomon visited Dittmar to discuss the renewal. She testified that upon arriving at the agency she was referred by Mr. Dittmar to an unidentified girl who made no other inquiry than "how many rooms are there?" and then stated that "we'll take care of everything; we'll send you the policy. You're insured for all." Significantly, Continental does not allege any misrepresentation by Mrs. Solomon or her husband in the procurement of the policy.
In due course the Continental homeowners' policy was issued, to run from October 11, 1966 to October 11, 1969. The pertinent provisions of the policy were as follows:

General Conditions.

2. Definitions:
(a) Insured: The unqualified word "Insured" includes (1) the Named Insured and (2) if residents of his household, his spouse, the relatives of either and any other person under the age of twenty-one in the care of an insured * * *.
(b) Premises: Means the premises described in the Declarations, including grounds, garages, stables and other outbuildings incidental thereto, and private approaches thereto.
* * *

Insuring Agreements.

(1) Coverage E  Personal Liability:

*131 (a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.
* * *

5. Supplementary Definitions:
(a) * * *
(b) * * *
(c) Premises: For purposes of Section II, the definition of "premises" appearing in the Basic Policy shall include:
(1) all premises where the Named Insured or his spouse maintains a residence and includes private approaches thereto and other premises and private approaches thereto for use in connection with said residence except business property and farms, * * *. [emphasis added]
(d) "Business property" includes (1) property on which a business is conducted, * * *.
Based primarily on the above provisions, the trial judge ruled that plaintiffs Mr. and Mrs. Solomon were not insured by Continental because the incident occurred on business property, which was specifically excluded from the coverage; that Eugene was not covered because of the above reason and also because he was not a "resident" at the time of the fire, and that Dittmar was not liable in negligence for failing to properly insure plaintiffs. Additionally, the trial judge in the course of his opinion alluded to the special exclusionary provision (a) (1) applicable to Section II. In the pretrial order dated August 3, 1971 Continental based its defense upon the definitions set forth in Section II, Item 5(c) and (d), and denied that Eugene was an insured under the policy. It also reserved the right to rely upon such portions of the policy referred to under "Exclusions" as might be deemed applicable. However, if additional sections of the policy other than those to which we have alluded were to be relied upon, Continental was required to inform all parties by letter prior to trial. It never did.
*132 On January 3, 1968 Continental wrote the named insureds that there was no coverage afforded them with respect to the Lucas claim. On October 23, 1968 Continental wrote to a law firm that apparently had initially represented the Solomons that there was no coverage for the allegations set forth in the Lucas complaint, relying upon Section II, Items 5 (c) and (d). The letter further indicated that Eugene Solomon was not an insured, as that term is defined in the insurance policy.
We agree with the trial judge's determination that Eugene was not covered. He was not a named insured and he was not a resident of the insureds' household at the time of the fire, as required under the definition of "Insured" in the policy. Continental owes no contractual duty to Eugene. James v. Federal Insurance Co., 5 N.J. 21, 24 (1950); American Legion Hosp. v. St. Paul Fire Ins. Co., 106 N.J. Super. 393, 397 (App. Div. 1969).
As already noted, the trial judge referred to a special exclusionary clause (a)(1), applicable to Section II, which purports to exclude any business pursuits of an insured. Suffice it to say that we deem this exclusionary clause inapplicable. The named insureds were definitely not engaged in any business pursuits. They did not participate in Eugene's gunsmithing activity. Additionally, as already observed, we have found Eugene not to be an insured. Furthermore, we note that this exclusionary clause was never raised as a defense by Continental at the trial or on this appeal.
On the first sheet of the policy captioned "Declarations" there is a paragraph entitled "Descriptive Data." The dwelling is therein described as "frame." That paragraph also includes the following statement: "Section II Only: (a) The described premises are the only premises where the Named Insured or spouse maintains a residence other than business property and farms, * * *." The significance, if any, of this statement is difficult to comprehend.
Section I covers the insured against loss to the property due to fire, lightning, windstorm, explosion, vandalism, etc. *133 The dwelling is insured for $15,000 and the appurtenant private structures for $1500. The term "appurtenant private structures" is defined in an attached rider. Under Section II, which covers the insureds against personal liability for accidental injuries to other persons, that term is not defined.
The trial judge was of the opinion that the hatchery building in which the gunshop operation was conducted was an "outbuilding" coming within the general definition of "premises" insofar as Section I fire insurance coverage is concerned, and that "The Company makes no quibble in that regard." However, the trial judge ruled that the definition of "premises" under Section II, covering personal liability coverage, was different. The definition of "premises" under "General Conditions" 2 (b) in the basic policy, and the "Supplementary Definitions" 5(c) and (d) which are contained in a four-page complicated rider, attached and made a part of the basic policy, at best create an ambiguity. Doubts as to the existence of coverage must be resolved in favor of the insured. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504 (1965). The "General Conditions" appear in the middle of a sheet entitled "OTHER PROVISIONS APPLICABLE TO SECTIONS I AND II EXCEPT AS OTHERWISE INDICATED." The ordinary person reading the basic policy could easily conclude that the definition of "premises" therein contained in 2(b) applied to Section II, and would not look for a "supplemental definition" of "premises" contained in the attached complex rider.
The average layman who receives a "broad form" of a homeowners' policy would normally expect personal liability coverage for accidental injuries suffered on his property. He has a right to rely upon reasonable anticipated coverage and should not be subject to hidden pitfalls. American Policyholders' Ins. Co. v. McClinton, 100 N.J. Super. 169 (Ch. Div. 1968). As already noted, we perceive no exclusionary clause applicable to the named insureds. In fairness to the policyholders, exclusions must be "so prominently placed and so clearly phrased that `he who runs can read'." Bauman *134 v. Royal Indem. Co., 36 N.J. 12, 21 (1961); Gerhardt v. Continental Cos., 48 N.J. 291 (1966). Any exclusionary or limiting provision conceived by reading collectively various clauses scattered throughout the basic policy, and the attached rider, would not bar plaintiffs from claiming the coverage they reasonably anticipated.
Insurance policies are complex contracts of adhesion, prepared by the insurance company, not subject to negotiation and unintelligible to the average person were he to attempt to read and understand their unfamiliar and technical language, and awkward and unclear arrangement. Hence we recognize the justifiable reliance by the purchaser on the agent's knowledge and representation. Average purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. If the named insureds, contrary to their expectations, were to receive insurance coverage only on the dwelling and certain unidentified portions of the tract of land, and not on the "outbuildings," that fact should have been clearly indicated to them by an unmistakable prominently placed provision in the policy. Also, if it was intended that there be different coverage as to the structures with respect to fire insurance and liability insurance that fact should have clearly appeared in the policy.
It is the insurer's burden to obtain, through its representatives all information pertinent to the risk, and to make exclusionary provisions plain, clear and prominent to the layman. Harr v. Allstate Ins. Co., 54 N.J. 287, 303, 304 (1969). This obligation on the part of the insurer was recognized by John H. Luland, senior underwriter of Continental's homeowners' personal lines. On cross-examination he frankly admitted that he expected their agents to ask certain questions of the insured important to the risk, and one of those "important" questions would be the use of the premises in order to determine whether to reject the risk, perhaps increase the coverage so that the insured would get *135 what he anticipated, and to ascertain if he might be ineligible for homeowner's coverage.
In the instant case we have the unrefuted testimony respecting the visit of Mrs. Solomon to the Dittmar Agency; she was referred to a girl in the office who merely inquired as to the number of rooms in the dwelling, and the girl assured Mrs. Solomon that they were "insured for all." Under these facts equitable estoppel possibly could be invoked to bar a defense of noncoverage. We are mindful of the fact that Continental may be saddled with coverage it would have declined. Yet this result is of its own making because of the failure of its agent to make inquiry with respect to the use of a portion of the former chicken hatchery building, and the affirmative representation of the unidentified girl in the office. The fact that the insurer has received no premium for the risk from which the loss ensued is no obstacle. Any additional premiums can be charged against the named insureds. Harr, supra, at 307.
In passing we note our disagreement with the trial judge's determination that the unrefuted testimony concerning the unidentified girl in the Dittmar Agency constituted inadmissible hearsay. In Harr, supra, the agent's statement to the insured that he was "fully covered" was deemed admissible. See also Evidence Rules 63(8) (a) and 63(9) (a); Noberco Co. v. Ferro Trucking, Inc., 107 N.J. Super. 394 (App. Div. 1969); and see Irianne v. Diamond T of Hudson Co., Inc., 94 N.J. Super. 148 (App. Div. 1967), with respect to testimony of an unidentified agent.
While we have considered the doctrine of equitable estoppel as possibly applicable to defeat the insurer's claim of noncoverage, we predicate our conclusion on the premise that the named insureds are afforded coverage under the policy, since the definitions relied upon to deny coverage are at best ambiguous and there is no clearly effective exclusionary clause denying personal liability coverage to the named insureds on their premises predominantly residential *136 in character. The incidental business use of the outbuilding by Eugene was not incompatible with the use of the property as a residence.
The judgment in favor of Continental against plaintiffs John Solomon and Bertha Solomon is reversed, and affirmed as to plaintiff Eugene Solomon. The judgment in favor of Dittmar against plaintiffs is affirmed.