**BANK OF DADE, Plaintiff-Appellee,**

**v.**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellant.**

**No. 73-1349**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Aug. 24, 1973.

Edward E. Dorsey, James H. Keaten, Richard H. Sinkfield, Atlanta, Ga., for defendant-appellant.

James E. Clark, Birmingham, Ala., amicus curiae for The Surety Assn. of America.

Dennis D. Watson, Lafayette, Ga., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

The question for decision in this unusual Georgia diversity case is whether

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

a robbery by extortion of plaintiff bank's funds constitutes a loss covered by the standard form Banker's Blanket Bond insurance policy issued to the bank by the defendant insurer.

The facts are undisputed, having been stipulated by the parties. During banking hours, an intruder entered the home of Edward Wilkie, president of the plaintiff Bank of Dade, and held Wilkie's wife and daughter hostage. He telephoned Wilkie at the bank and threatened harm to the family hostages unless money was obtained from the bank and delivered to an indicated location outside the Wilkies' home under a car parked in the carport. He told the banker that his wife and daughter would not be harmed if he cooperated, that he would take one of the hostages with him and would kill if he was followed; that if no one was informed, however, the hostage would be released unharmed. Wilkie and one other bank employee then collected $16,000 from two of the bank windows and complied with the intruder's instructions, delivered the money to the place indicated and returned to the bank. Wilkie did not notify any law enforcement officers of the call. The intruder took the money and the Wilkies' daughter with him, but released her after traveling a short distance. After she was safely returned, Wilkie informed the bank's Vice-Chairman of the Board of Directors and the F.B.I. of the incident. Subsequently the defendant insurer was notified of the robbery and a proof of loss was submitted for payment. The insurer denied liability, however, and this suit followed.[1]

The pertinent provisions of the Banker's Blanket Bond, Standard Form No. 24, read as follows:

"THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:

\*    \*    \*    \*    \*    \*

"On Premises

"(B) Any loss of Property through robbery, burglary, common law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except in an office hereinafter excluded or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation."

The defendant insurer contends that the loss is not within the terms of Clause B because it did not occur on the bank premises. The plaintiff bank contends, to the contrary, that the loss occurred when the president removed the money from the bank's premises to deliver it pursuant to the extortionist's instructions. The district court held that the loss was within the Clause B coverage because the theft was of money which was "supposed to be" on the bank premises.

There is little direct authority on the question presented. Defense counsel supplied the district court with an unpublished opinion of Chief Judge Arraj in The University National Bank of Fort Collins v. Insurance Company of North America, CA C–3603, D.C.Colo., decided June 5, 1972, which construed Clause B of the Banker's Blanket Bond, Standard Form No. 24, under circumstances similar to those here. In that case a bank president received a phone call from a person claiming to have kidnapped his wife and daughter. The caller demanded that $100,000 be immediately placed in a briefcase and left near a bench in a downtown mall, that if police were notified it would result in the death of the wife and daughter. The banker complied and the money was taken. The in-

---

1. The extortionist was later arrested—one Robert Garnett Carter,—was charged in Federal Court with bank robbery by intimidation (18 U.S.C. Sec. 2113(a)), pled guilty and was sentenced to a prison term.

surer argued in the cited case that the bank retained control over the extorted funds until its president relinquished possession of them, and denied coverage. The court held that the taking of the bank funds occurred when the president began complying with the extortionist's instructions. The court reasoned that because of the nature of the gravity of the threats and coercion the president had no effective alternative to compliance. The court concluded, therefore, that the bank's loss occurred while the money was on the premises and that the loss was covered by Clause B. We agree with that reasoning, though the district court in the instant case declined to do so, asserting other grounds already referred to.[2]

It is clear that Wilkie took $16,000 from the bank because of serious coercive threats against his family then held hostage. He placed the bank funds at the carport outside his home when they were supposed to be in the bank. Although Wilkie retained possession of the funds until their placing, the bank effectively had no influence over him from the time the intruder began speaking to him over the telephone, and exercised no control over the funds once Wilkie began collecting them from the bank windows.

That the extortionist did not have actual possession of the funds until they were placed is not controlling, therefore, since he had accomplished their taking and had deprived the bank of them. At the time of Wilkie's taking there was no bank authority for removal of the funds, which were "supposed to be" on the bank premises at all times following their removal. Though there was an interval of time and distance between the taking of the funds from their proper place at the bank and placing them in the extortionist's possession, there can

---

2. The district court in its written decision said in part in this regard:

> To this Court the controlling issue is one never reached in The University National Bank of Fort Collins v. Insurance Company of North America, supra. It is also an issue which was not argued by the parties in the case sub judice. That issue relates to the import of the parenthetical statement in paragraph B, "is supposed to be." Coverage would be extended to property while it is supposed to be within the Bank unless excepted by the language of Paragraph "B."
>
> "Supposed to be" is not language of any unusual legal significance. Standard usage as explained in Webster's Third New International Dictionary, Unabridged, would make "supposed" synonymous to "Required," "permitted" or "intended." Certainly the $16,000 in issue was required, intended, or "supposed to be" in the offices of the Bank. Under the view as presented by both sides, there was no proper Bank authority for the removal of the money from its offices.
>
> The Court is therefore of the opinion that the loss of the Bank occurred within the terms of Paragraph "B."

Cf. also Bremen State Bank v. Hartford Accident & Indemnity Co., 7 Cir., 1970, 427 F.2d 425, 427, where the Court construed Clause B in a case involving "misplacement" of money which the Bank claimed to have occurred on its premises. In that case, the bank was moving from one location to another. It instructed its tellers to put their money on the floor of the vault, rather than in metal lockers inside the vault, which was the usual practice. One teller, Mrs. Laucke, did not receive those instructions, and put her cash drawer money in a metal locker instead of on the vault floor. After the locker was loaded onto a moving van, one of the mover's employees found the money and absconded with it. The bank argued that the money was lost because it was misplaced on the bank premises. The insurer contended that the loss was due to theft after the money had left the bank premises and was on the moving van. In construing the "on premises" requirement, the court said:

> The bank claims coverage only under Clause B, arguing that the loss was occasioned through "misplacement" of the money. Hartford contends that although the money was misplaced "in a loose sense," the loss resulted through theft after the money had left the bank premises, and was therefore not covered by the bond. The fallacy of Hartford's argument lies in its reliance on the events which occurred after the money had been misplaced. We think it is plain from the language of the bond that a loss resulting from misplacement of money, regardless of subsequent events, was contemplated as being covered. Surely the bank's loss in the instant case would not have been suffered had it not been for Mrs. Laucke's misplacement of the money. The subsequent theft by Danny Francis resulted from that misplacement and does not take the loss out of the coverage of the bond.

be no doubt that the money was obtained by one who had no legal right to it. We see little distinction between resting the decision on the basis that funds which were supposed to be in the bank were not there, and on finding that the funds were lost at the time they were gathered and removed from the premises without bank authorization, from where they were supposed to be.[3] Under either rationale there was robbery by extortion of the Bank of Dade which constituted a loss covered under Clause B of the Banker's Blanket Bond.

Affirmed.

Dennis R. Knapp, District Judge, dissented and filed opinion.

---

3. Cf. National Bank of Com. in New Orleans v. Fidelity & Cas. Co., E.D.,La., 1970, 312 F.Supp. 71, 76, aff'd. 5 Cir., 437 F.2d 96, cert. denied 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682, where the Court held:

Defendant maintains, however, that because clause B is entitled "ON PREMISES," all of the items mentioned therein must have occurred on the premises of the insured in order to be covered; it then contends that any "false pretenses" involved

in the instant transactions were made off the premises, and that the losses are therefore not recoverable. Even assuming the "on premises" requirement does apply to "false pretenses" as well as to "property," the argument that misrepresentation of the solvency of Hughes Walsh's Dallas account [when he mailed a check for deposit from Dallas to the New Orleans bank] was not made at the New Orleans bank is fanciful.