**ORITANI SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.**

**Civ. A. No. 89–5355.**

United States District Court,
D. New Jersey.

July 6, 1990.

---

Andrew T. Fede, Contant, Schuber, Scherby & Atkins, Hackensack, N.J., for plaintiff.

Joseph P. McNulty, McElroy, Duetsch & Mulvaney, Morristown, N.J., for defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

### INTRODUCTION

Plaintiff, Oritani Savings & Loan Corporation, ("Oritani"), seeks a declaratory judgment in this matter that defendant, Fidelity & Deposit Company of Maryland, ("Fidelity"), is obligated to indemnify it under a Savings and Loan Blanket Bond (an insurance contract) executed between the parties. Oritani also claims that Fidelity breached its covenant of good faith and fair dealing by denying insurance coverage and that it is therefore entitled to compensatory and punitive damages, as well as attorneys' fees. The two count complaint asserting these claims was originally filed in the Superior Court of New Jersey, Bergen County, Law Division, on October 23, 1989, and the action was removed to this Court by Fidelity on December 27, 1989, on the grounds that there is diversity in citizenship and an amount in controversy in excess of $50,000.00. Presently before the Court is a motion by Fidelity for summary judgment on both counts of the complaint on the grounds that, under the express terms of the blanket bond and the undisputed facts of this case, no coverage is afforded for Oritani's claim.

### BACKGROUND

The material facts of this case which bear on the issue of coverage are undisputed. It is admitted that the parties had a valid contract of insurance during the rele-

vant time period. The blanket bond expressly covered "[a]ll the Insured's [plaintiff's] offices or premises in existence at the time this bond becomes effective...." At the time in question, Oritani had about eighteen branch offices all located in New Jersey.

The provisions of the bond at issue, (as identified in paragraph 2 a) of the Complaint), provide coverage for:

(A) Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others;

(B)(1) Loss of Property resulting directly from

(a) robbery, burglary, misplacement, mysterious unexplainable disappearance and damage thereto or destruction thereof while the Property is lodged or deposited within offices or premises located anywhere, or

(b) theft, false pretenses, common law or statutory larceny committed by a person

(i) present in an office of, or on the premises of, the Insured, or

(ii) present on the premises in which the Property is lodged or deposited.

It is undisputed that in May, 1988, Oritani suffered a "loss of property" within the meaning of the contract in the sum of $172,500.[1] However, defendant contests the issue of whether this loss of property was caused by dishonesty of an employee; or robbery, burglary, mysterious misplacement, etc.; or theft, false pretenses, etc., such that coverage should be afforded under the terms of the policy. The undisputed facts giving rise to the loss are as follows.

On May 10, 1988, Jack Rowe, a vice president of Oritani, was working in Oritani's main office in Hackensack, New Jersey, and, on this date, he had the responsibility of processing wire transfer requests for Oritani's customers. On said date, Mr. Rowe received a telephone call from a person who identified herself as "Debbie" and an employee of Oritani's branch office in Ho–Ho–Kus, New Jersey. Although Oritani did, in fact, have a branch office in Ho–Ho–Kus, Mr. Rowe does not recall whether there was, in fact, a "Debbie" working in that office at that time. At any rate, "Debbie" requested that Mr. Rowe effect a wire transfer of funds in the amount of $85,300.00 from an identified Oritani customer account. "Debbie" identified the customer Aaron D. Tyler, together with his account number 04012461, as well as all other appropriate information. Mr. Rowe responded by effecting the transfer. On May 13, 1988, a similar request for a wire transfer in the amount of $87,300.00 was made by one "Susan", who also identified herself as an employee from Oritani's Ho–Ho–Kus branch office; "Susan" requested that the money be transferred from the same customer account (Mr. Tyler's account), just as "Debbie" had done, and Mr. Rowe effected the transfer. On May 20, 1988, Mr. Rowe learned that the Ho–Ho–Kus office had no record of these wire transfers and further, that Mr. Tyler's account had insufficient funds to cover the transfers. Since the monies had already been dispersed by the recipient banks, however, Oritani suffered the loss in the total amount of $172,500.00.

Oritani has admitted that Mr. Rowe was not a knowing participant in the aforementioned fraudulent scheme which caused Oritani to suffer this loss. It appears that Mr. Rowe made no effort to verify whether funds existed to cover the wire transfers at the time they were made, and it further appears that the account in question was little more than a year old and its balance never exceeded $4,000. *See* Affidavit of Andrew T. Fede, June 13, 1990, ("Fede Aff."), and Exhibit A. Nevertheless, Mr. Rowe testified at his deposition that he followed his normal procedure in effecting the transfers. *See* Rowe dep. at 49, (De-

---

**1.** The issue of whether the loss of monies was a "property loss" within the meaning of the bond was not raised by defendant. However, this cannot reasonably be disputed. "Property" is defined under the bond as including "money, securities, negotiable instruments, certificates of deposit, ... evidences of debt, ...", etc. *See also Portland Fed. Employees Credit Union v. Cumis Ins. Society*, 894 F.2d 1101 (9th Cir.1990).

fendant's brief, Exhibit D). Oritani's procedures for effecting wire transfers was the subject of a memorandum dispersed to branch managers and senior officers of the bank. *See* Rowe dep. at 27–28 (Fede Aff., Exhibit K). Oritani has investigated the matter and has been unable to determine whether the persons who made the phone calls were actually employees of Oritani and/or present in Oritani's branch office. *See* Oritani's Answer to Admission No. 4. However, the parties apparently concede that Mr. Rowe was of the impression that "Debbie" and "Susan" were employees of and calling from the Ho–Ho–Kus branch office. The callers used Mr. Rowe's nickname, "Jack", when making the calls, and he states that only employees of Oritani would know this. *See* Rowe dep. at 58. The funds that were transferred were Oritani funds that were on deposit and wired by United Jersey Bank to the First National Bank in Barthesville, Oklahoma, and the Lawrence National Bank in Lawrence, Kansas. Oritani's Answer to Admission No. 5.

Defendant has now moved for summary judgment asserting that no coverage is afforded, because there is no evidence that "Debbie" and "Susan" were actually on Oritani's premises at the time the fraudulent schemes were carried out.

## DISCUSSION

### A. *Standard of Review*

Rule 56 of the Federal Rules of Civil Procedure provides that "judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.Pro.* 56(c). The moving party has the initial burden of satisfying this standard, (*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1985)), which can be accomplished by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Peters Twp. School Dist. v. Hartford Acc. & Indem.*, 833 F.2d 32, 34 (3d Cir.1987).

In opposing summary judgment, the nonmoving party cannot rely upon the allegations of his pleadings; he must come forward with evidence supporting a claim that there is a material fact in dispute to be resolved by the trier of fact. *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). All inferences to be drawn from the facts should be resolved in favor of the nonmoving party. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987).

However, the construction of contracts is a question of law for the court. *Ram Constr. Co., Inc. v. Am. States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir.1984); *Northeast Custom Homes, Inc. v. Howell*, 230 N.J.Super. 296, 301, 553 A.2d 387 (Law Div.1988). Ultimately, at trial, it would be necessary for this Court to instruct the jury as to what coverage the policy provides. *Davis v. The Equitable Life Assur. Soc.*, 90 N.J.Super. 328, 331, 217 A.2d 459 (App.Div.1966). As the parties concede, the issue presented to this Court for decision involves only a question of law; namely, whether no coverage is afforded under the insurance policy, because there is no evidence that Debbie and Susan were actually on the insured's premises.

### B. *Choice of Law*

Since this is a diversity suit, the first issue that must be addressed is the choice of law to be applied. Under *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 494, 61 S.Ct. 1020, 1020–21, 85 L.Ed. 1477 (1941), I must look to the conflict of law rules prevailing in the State in which this Court sits, namely, New Jersey, to determine the applicable law. The parties have proceeded on the premise that New Jersey law governs this dispute; the plaintiff's offices which are the subject of the insurance contract are located in New Jersey; and it appears that the contract was executed in New Jersey. Thus, I shall apply New Jersey law. *See State Farm Ins. Co. v. Sim-*

*mons' Estate*, 84 N.J. 28, 37, 417 A.2d 488 (1980); *McNeilab, Inc. v. North River Ins. Co.*, 645 F.Supp. 525, 529 n. 5 (D.N.J.1986), *aff'd*, 831 F.2d 287 (3d Cir.1987).

## C. The "ON THE PREMISES" Clause

■ The issue presented to me for decision—whether the "on the premises" clause of a blanket bond bars coverage for a fraudulent scheme involving the use of a telephone call from off the premises of the insured—has apparently not been decided by any court in the state of New Jersey. Thus, I am to be guided by relevant state precedent governing interpretation of insurance policies in general, analogous decisions in other jurisdictions, considered dicta, scholarly works, and other reliable data. *McNeilab*, 645 F.Supp. at 532 & n. 9. Under New Jersey law, insurance contracts are generally considered to be "contracts of adhesion, prepared unilaterally by the insurer, and have always been subjected to careful judicial scrutiny to avoid injury to the public." *Sparks v. St. Paul Ins. Co.*, 100 N.J. 325, 335, 495 A.2d 406 (1985). It has long been the policy in New Jersey that

> [i]f the controlling language [of the policy] will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow. * * * [D]oubts as to the existence of coverage must be resolved in favor of the insured.

*Mazzilli v. Accident & Cas. Ins. Co.*, 35 N.J. 1, 7–8, 170 A.2d 800 (1961); *accord Kopp v. Newark Ins. Co.*, 204 N.J.Super. 415, 420, 499 A.2d 235 (App.Div.1985). This settled rule of law that doubts and ambiguities must be resolved in favor of coverage applies as well to fidelity bonds issued to banks. *Fidelity & Deposit Co. of Md. v. Hudson United Bank*, 653 F.2d 766, 772 n. 8 (3d Cir.1981).

■ Moreover, even if the contract language is not necessarily ambiguous, the contract should be interpreted in accordance with the reasonable expectations of the insured. *See Sparks*, 100 N.J. at 336–

38, 495 A.2d 406; *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 612, 503 A.2d 862 (1986) ("courts will enforce only the restrictions and the terms in an insurance contract that are consistent with the objectively reasonable expectations of the average insured"); *see also Perrine v. Prudential Ins. Co.*, 56 N.J. 120, 126–27, 265 A.2d 521 (1970); *Gerhardt v. Continental Ins. Co.*, 48 N.J. 291, 297–300, 225 A.2d 328 (1966); *Killeen Trucking v. Great Am. Surplus Lines Ins. Co.*, 211 N.J.Super. 712, 716–17, 512 A.2d 590 (App.Div.1986). Thus, the controlling, overriding, goal in interpreting a contract of insurance is to fulfill the reasonable expectations of the insured. To the extent there are any hidden pitfalls in the policy language which conflict with the insured's reasonable expectations, the pitfalls should not be applied to defeat coverage. *See Am. Policyholders' Ins. Co. v. McClinton*, 100 N.J.Super. 169, 175, 241 A.2d 462 (Ch.Div.1968) ("in order to fulfill the insured's reasonable expectations he should not be subjected to technical encumbrances or to hidden pitfalls"); *see also Transamerica Ins. Co. v. Keown*, 451 F.Supp. 397, 400 (D.N.J.1978) ("the insured should not be subjected to hidden pitfalls").

In light of these standards, and for the reasons explained in more detail below, I reject defendant's proffered construction of the "on the premises" clause in the bond in this matter. I find that the language of the contract is ambiguous and can be interpreted to afford coverage for the loss sustained in this case, and further, that defendant's construction does not comport with the reasonable expectations of the insured. Moreover, I find that summary judgment should not be granted in defendant's favor for the additional reason that a question of fact exists as to whether coverage is available under Section (A) of the bond.

### (i) Ambiguities in the Contract Language

■ The provision of the blanket bond at issue is ambiguous and can be interpreted to afford coverage in two respects. First, the blanket bond states, in part, that coverage is afforded for *"false pretenses ... committed* by a person ...

present in an office of, or *on the premises of, the Insured.*" This language can reasonably be interpreted to mean that coverage is afforded where either (1) the person committing the false pretense is present at the insured's office; *or* (2) the *false pretense* is committed at the insured's premises. In the latter case, the person making the false pretense need not necessarily be located at the insured's premises. This interpretation comports with the typical application of blanket bonds. For instance, there are a number of cases in which coverage has been afforded under blanket bonds for losses incurred as a result of schemes involving the passing of bad checks. The "on the premises" clauses in the blanket bonds in such cases have not been interpreted to defeat coverage. *See, e.g., National Bank of Commerce in New Orleans v. Fidelity & Cas. Co. of N.Y.,* 312 F.Supp. 71 (E.D.La.1970), *aff'd,* 437 F.2d 96 (5th Cir.1971), *cert. denied,* 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971), where the court stated:

> Defendant maintains, however, that because clause B is entitled "ON PREMISES," all of the items mentioned therein must have occurred on the premises of the insured in order to be covered ...
> ... Hughes mailed a deposit from Dallas to the New Orleans bank. He intended the New Orleans bank to believe the check was good when the New Orleans bank received it, and his expectation was borne out. *The act of depositing it in New Orleans constituted a false representation there.*

*Id.* at 76 (emphasis added).

Likewise, in *Hartford Acc. & Indem. Co. v. Fed. Deposit Ins. Corp.,* 204 F.2d 933 (8th Cir.1953), the insured had suffered a loss resulting from the presentment of bad checks and issuance of credit to an account with insufficient funds. "At the trial the defendant asserted that the loss was not covered by the bond because the false representations were not made on the Bank's premises...." *Id.* at 935. The court rejected this contention and held that there was a false pretense on the premises of the insured within the meaning of the fidelity bond such that coverage was afforded. *Id.*

at 937. *See also First Nat'l Bank of Decatur v. Insurance Co. of N. Am.,* 424 F.2d 312, 315, 317 n. 3 (7th Cir.1970), *cert. denied,* 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272 (1970) (blanket bond provides coverage for check kiting scheme despite an "on the premises" clause); *Fidelity & Cas. Co. of N.Y. v. Bank of Altenburg,* 216 F.2d 294, 303–04 (8th Cir.1954), *cert. denied,* 348 U.S. 952, 75 S.Ct. 440, 99 L.Ed. 744 (1955) (same).

Moreover, if defendant's construction were adopted such that the phrase "on the premises of the insured" required the person committing the false pretense to be present at the insured's office, the phrase "on the premises of the insured" in the policy would be surplusage. Naturally, a person who is present in an office of the insured will be on the premises of the insured. However, as discussed above, a false pretense can be committed on the premises of the insured without the presence of the defrauder at the insured's office. Thus, to interpret Section (B)(1)(b)(i) to require either that the defrauder be present at the insured's office, *or* that the *false pretense* be committed at the insured's premises, gives meaning to each of the words used in this provision. On the other hand, defendant's construction renders part of the provision superfluous.

Accordingly, the insurance contract is ambiguous and can reasonably be interpreted to afford coverage for false pretenses committed on the insured's premises, irrespective of the location of the defrauder. If defendant intended to exclude coverage for frauds perpetrated on the insured's premises through telephonic or other means of communication, (as it suggests on this motion), it could have easily said so. *Compare Solomon v. Continental Ins. Co.,* 122 N.J.Super. 125, 134, 299 A.2d 413 (App.Div.1972) ("[i]t is the insurer's burden to obtain, through its representatives all information pertinent to the risk, and to make exclusionary provisions plain, clear and prominent to the layman"). However, defendant included no such exclusion in the policy. The false pretenses in this case were committed on the insured's premises,

as "Debbie" and "Susan" telephoned Oritani's main branch and made false representations to Mr. Rowe while he was there. Thus, coverage should be afforded under Section B(1)(b)(i) of the bond, subject to any additional defenses the defendant may raise.

 Beyond this, as I indicated above, there is a second reason why the language of the bond is ambiguous. Even if the bond were construed to mean that the person committing the false pretense must be "present" at the insured's premises, (and not just that the false pretense must be committed at the insured's premises), there is an ambiguity because the language of the bond does not take into account the fact that a defrauder may be constructively present at the insured's premises. Although the term "present" is not defined in the bond, Black's Law Dictionary defines "presence" as:

> **Presence.** Act, fact, state of being in a certain place and not elsewhere.... The existence of a person in a particular place at a given time particularly with reference to some act done there and then. Besides actual presence, *the law recognizes constructive presence*, which latter may be predicated of a person who, though not on the very spot, was near enough to be accounted present by the law, or who was actively cooperating with another who was actually present.

Black's Law Dictionary 1065 (5th ed. 1979) (emphasis added). *See Midland Bank & Trust Co. v. Fidelity & Deposit Co. of Md.,* 442 F.Supp. 960, 970 (D.N.J.1977) (Whipple, C.J.) (referring to Black's Law Dictionary to determine meaning of words used in an insurance bond).

Indeed, the term "constructive presence" is commonly used in cases involving the commission of criminal offenses. *See, e.g., Sayles v. State,* 552 So.2d 1383, 1389 (Miss. 1989); *Sutton v. Commonwealth,* 324 S.E.2d 665, 672 (Va.1985); *State v. Gazerro,* 420 A.2d 816, 828 (R.I.1980); *State v. Pomerleau,* 363 A.2d 692 (Me.1976); *State v. Ruffin,* 90 N.C.App. 712, 370 S.E.2d 279, 281 (N.C.Ct.App.1988); *State v. Hamsley,* 672 S.W.2d 437, 439 (Tenn.Ct.App.1984);

*State v. Maynard,* 65 N.C.App. 612, 309 S.E.2d 581, 582 (N.C.Ct.App.1983); *State v. Stapleton,* 638 S.W.2d 850, 857–58 (Tenn. Ct.App.1982). The term is also frequently used in connection with findings of "direct contempt" which must be based upon conduct within the "presence," (actual or constructive), of the court. *See, e.g., People ex rel. Finck v. Locher,* 172 Ill.App.3d 706, 122 Ill.Dec. 542, 545, 526 N.E.2d 935, 938 (1988); *In re Carroll,* 28 Ohio App.3d 6, 501 N.E.2d 1204, 1207 (1985); *State v. Diamond,* 94 N.M. 118, 607 P.2d 656, 658 (1980); *Commonwealth v. Fladger,* 250 Pa. Super. 36, 378 A.2d 440, 442 n. 2 (1977). The term has been used in connection with jurisdictional questions, (*see, e.g., Diaz v. Diaz,* 568 F.2d 1061, 1062 (4th Cir.1977); *State v. Sparks,* 701 S.W.2d 731, 733 (Mo. Ct.App.1985)), and a defendant's constitutional right to be "present" at trial. *See, e.g., Smith v. State,* 453 So.2d 505, 506 (Fla. Dist. Ct.1984), *pet. for rev. denied,* 462 So.2d 1107 (Fla.1985). Particularly noteworthy is *Commonwealth v. Allen,* 441 S.W.2d 424 (Ky.Ct.App.1969), where the court held that the defendant was constructively present at the sale of unregistered securities, because he made himself available to the salesman *by telephone* both at his office and his home.

A "constructive presence" definition has also been applied in construing "on the premises" clauses in blanket bonds. In particular, blanket bonds have been construed to require that the property loss be suffered by the insured from property located at the insured's premises. In *Bank of Dade v. Fidelity and Deposit Co. of Md.,* 483 F.2d 735 (5th Cir.1972), at issue was a policy providing coverage for "[a]ny loss of Property ... while the Property is (or is supposed to be) lodged or deposited within any offices or premises...." *Id.* at 736. In that case, the bank president received a telephone call from a kidnapper who was holding his wife and child and demanding ransom. The president removed money from the bank, placed it in a carport outside his home, and sometime later, he delivered it to the extortionist. *Id.* at 737–38. Although the loss of property actually occurred a distance from the

bank's offices and sometime after being removed therefrom, the court held that the bond provided coverage. *Id.*

Defendant, Fidelity, has cited a dictionary definition for the word "present" which would foreclose a "constructive presence" interpretation. *See* Defendant's Brief at 8. However, since the policy provides no definition for the word "present", I must accept the definition that is most favorable to the insured. *See, e.g., Ohio Cas. Ins. Co. v. Flanagin*, 44 N.J. 504, 519, 210 A.2d 221 (1965). *See also Solomon, supra,* 122 N.J.Super. at 133, 299 A.2d 413 (App.Div.1972) (ambiguity concerning the use of the word "premises" required that the court accept a definition extending coverage to outbuildings). Accordingly, even if the bond required the presence of the defrauder at the insured's premises, (and not just that the false pretense be committed on the insured's premises), I would find coverage here. The word "present" as used in the "on the premises clause" of the blanket bond should be construed to include both actual or constructive presence. Here, "Debbie" and "Susan" were constructively present at the insured's premises, since they were in direct contact with Mr. Rowe by telephone, their audio-presence at the premises was necessary for the success of their scheme, and they represented that they were present at Oritani's Ho–Ho–Kus office.

### (ii) *Reasonable Expectations of the Insured*

The construction which I have placed upon the blanket bond, as set forth above, is compelled by the principle that the reasonable expectations of the insured must be fulfilled. It appears that the bulk (if not all) of the cases relating to coverage for false pretenses under blanket bonds issued to banks relate to check kiting or other similar schemes. *See, e.g., First Nat'l Bank of Decatur, supra,* 424 F.2d at 315; *Fidelity & Cas. Co. of N.Y., supra,* 216 F.2d at 294; *Hartford Acc. & Indem., supra,* 204 F.2d at 933; *National Bank of Commerce, supra,* 312 F.Supp. at 71; *see also United Pac. Insur. Co. v. Idaho First Nat'l Bank,* 378 F.2d 62, 65 (9th Cir.1967).

Almost all (if not all) of the fraudulent schemes in these cases did not require or entail the presence of the defrauder at the bank's premises. Thus, if I were to accept defendant's construction here, the type of coverage historically afforded under this type of bond would be eviscerated. Moreover, in light of modern technology and the ever-increasing use of telephonic and computerized communications, defendant's construction would afford very little coverage under this provision of the bond. This simply does not comport with the reasonable expectations of the insured. *Compare Kievit v. Loyal Protective Life Ins. Co.,* 34 N.J. 475, 483, 170 A.2d 22 (1961) ("[w]here particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy objective").

I note that defendant relies heavily upon *Southern Nat'l Bank of N.C., ("SNB") v. United Pac. Ins. Co.,* 864 F.2d 329 (4th Cir.1989), in support of its position that no coverage is afforded, because there is no evidence that "Debbie" and "Susan" were actually present at Oritani's offices. However, I decline defendant's invitation to apply this case here. *SNB* involved a third party who made absolutely no representations that he was an employee of the bank, and it was not argued in that case that a false representation was made on the premises of the insured and/or that the third party was constructively on the insured's premises. Rather, the issue in that case concerned the interpretation of Section B(1)(b)(ii) of the blanket bond and whether the third party was constructively on the same premises as the property of the insured. *See SNB,* 864 F.2d at 331. The instant case involves an interpretation of Section B(2)(b)(i) of the bond and the issue of whether the false pretenses were committed on the insured's premises. Thus, *SNB* involved different facts and different legal issues than the instant case. Moreover, New Jersey courts have not been hesitant to disagree with those jurisdictions which have resolved novel questions of insurance policy coverage in favor of the insurer. *See, e.g., Broadwell Realty v. Fi-*

*delity & Cas. Co. of N.Y.*, 218 N.J.Super. 516, 529–31, 528 A.2d 76 (App.Div.1987) (coverage extends to abatement remedies to prevent contamination of property to third parties despite policy exclusion for insured's own property); and *NPS Corp. v. Ins. Co. of N. Am.*, 213 N.J.Super. 547, 553, 517 A.2d 1211 (App.Div.1986) (coverage for bodily injury extends to emotional distress and mental anguish). As discussed above, the provision of the bond at issue should be construed to provide coverage where the false pretense was committed "on the premises" of the insured and/or where the defrauder is actually or constructively present at the insured's premises. I predict that New Jersey would follow this construction of the blanket bond in this case.

### D. *Section A of the Bond*

 It appears that plaintiff alleges, in paragraph 2(a) of its complaint, that coverage should be afforded under Section A of the blanket bond. This provision provides coverage for "[l]oss resulting directly from dishonest ... acts of an [e]mployee...." I find that summary judgment should not be entered in favor of defendant, because a question of fact exists as to whether this section provides coverage in this matter. In *Nat'l Newark & Essex Bank v. American Ins. Co.*, 76 N.J. 64, 385 A.2d 1216 (1978), the Supreme Court of New Jersey interpreted a similar blanket bond provision and held that a "dishonest" act of an employee must be very broadly interpreted to include an act that "indicates 'a reckless, wilful and wanton disregard for the interest of the employer—if it be an act manifestly unfair to the employer and palpably subjects him to likelihood of loss.'" *Id.* at 76, 385 A.2d 1216 (quoting *London and L. Indem. Co. v. People's Nat'l Bank and Trust Co.*, 59 F.2d 149, 152 (7th Cir. 1932)). For instance, in *Nat'l Newark & Essex Bank*, the Court held that the acts of the employee in that case were "dishonest" within the meaning of the bond where the employee granted various under-collateralized loans to a customer whose accounts were overdrafted. The employee did not personally profit from the loans, and his

subjective intent may have been blameless; the customer who was granted the loans had a longstanding account and enjoyed a special status. *See id.* 76 N.J. at 85, 385 A.2d 1216 (Sullivan, J., dissenting). However, the employee was held to the standards of trust and probity of a fiduciary, and the Court found that he had put the customer's interests above those of his employer. *See id.* at 78, 385 A.2d 1216. *See also Midland Bank & Trust*, 442 F.Supp. at 970 ("[i]t is generally recognized in New Jersey that fidelity bonds indemnifying employers against dishonest acts of their employees are to be broadly construed").

Thus, while instances of mere neglect or incompetence are not covered under a blanket bond, (*see National Newark & Essex*, 76 N.J. at 77, 385 A.2d 1216), reckless acts which subject the employer to a likelihood of loss are covered. Although Mr. Rowe testified that he followed normal company procedures in effecting the transfers in this case, the parties have not adequately addressed the issue of whether he was reckless and disregarded the interests of Oritani in authorizing wire transfers in the amount of $172,500.00 from an account which was approximately a year old and never had a balance exceeding $4,000.00. As discussed in *Nat'l Newark & Essex Bank*, Mr. Rowe's subjective intent is not determinative, but rather, the issue is whether he was reckless and disregarded Oritani's interests in favor of the interests of the customer. 76 N.J. at 78, 385 A.2d 1216. Ordinarily, the issue of whether the employee's act was dishonest within the bond coverage is for the jury to decide, *Mortgage Corp. of N.J. v. Aetna Cas. & Surety Co.*, 19 N.J. 30, 38, 115 A.2d 43 (1955), unless the facts reasonably permit of but a single conclusion. *Id.* At this stage, it does not appear that the facts permit of but the single conclusion that Mr. Rowe's acts were not dishonest within the meaning of the bond, and summary judgment must be denied for this reason as well.

### CONCLUSION

For all the foregoing reasons, defendant's motion for summary judgment is

denied. Although I have found that coverage exists under the undisputed facts of this case, I decline to enter judgment in favor of the insured, as plaintiff has not so moved and defendant may seek to assert additional defenses.