UNITED STATES FIRE INSURANCE COMPANY, Appellant,

v.

FIRST STATE BANK OF EL PASO, Texas and Kenneth C. Dean, Appellees.

No. 6478.

Court of Civil Appeals of Texas, El Paso.

June 2, 1976.

Rehearing Denied June 30, 1976.

Bailey, Williams, Westfall & Fowler, James A. Williams, Dallas, for appellant.

Grambling, Mounce, Deffebach, Sims, Hardie & Galatzan, Malcolm Harris, El Paso, for appellees.

## OPINION

PRESLAR, Chief Justice.

This case involves the interpretation of an insurance policy commonly known as a Banker's Blanket Bond, the right of the bank to recovery where money is lost by extortion, and the further question of the right of the insurer to recover against a president of a bank who complied with the extortionist's demands.

The trial Court, sitting without a jury, and based on stipulated facts, entered judgment for the bank against the insurer and did not permit the insurer to recover against the bank president. We affirm.

The First State Bank of El Paso, Texas, Appellee, brought this suit against United States Fire Insurance Company, Appellant, on what is commonly referred to as a Banker's Blanket Bond, contending that the bank had lost $40,000.00 when its president, Kenneth C. Dean, paid such amount to an extortionist. The Appellant-insurer denied the claim and joined the bank president,

Kenneth C. Dean, as a third party defendant, contending that in the event recovery was allowed against it, then it was entitled to recover over against Dean, because he was using the bank's money for personal use in freeing his wife.

On August 4, 1972, at about 8:30 A.M., Marilyn Dean, the wife of Kenneth C. Dean, bank president, was kidnapped by an unknown assailant. The kidnapper called Dean, put his wife on the phone and then threatened to kill her unless Dean came up with $100,000.00 is small bills; Dean talked him down to $50,000.00, told a vice-president of the bank about the call and instructed him to get the $50,000.00. Dean also called the F.B.I., but refused to wait to have his car bugged because the extortionist had given him a ten-minute time limit. Dean then left the bank with the money, which was only $40,000.00 due to an accounting error, and went from telephone to telephone at the extortionist's instructions until he was finally told to leave the money in his car and go to a phone in a shopping center; when he returned from the phone, the money had been taken from his car. His wife was later released, and the money has not been recovered. Soon after the incident the Board of Directors of the bank made a resolution absolving Dean of any liability or wrongdoing.

Recovery is sought by the bank under two sections of the Banker's Blanket Bond. One being the "on Premises" coverage, Section (B), and the other being "In Transit", Section (C). As applicable here, Section (B) provides that the insurer will indemnify and hold harmless the insured for "Loss of Property (occurring with or without negligence or violence) through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, * * * while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, * * other than an armored motor vehicle * * * , for the purpose of transportation." The trial Court held, and Appellant, with admirable candor, agrees that the criminal

activity which occurred here is covered in the above Paragraph (B) even though extortion as such is not named.

Appellant urges that there is no coverage because the crime insured against must have occurred "on premises" or more specifically, "while the Property is (or is supposed to be) lodged or deposited within" the offices of the bank. It argues that the extortionist did not come on the premises and physically remove the property, that, in fact, it was taken from the premises by a bank officer and its loss occurred at a point other than bank premises.

Three cases have been found which deal with this situation, none of which are from this jurisdiction but are persuasive in their holdings. The first is *The University Nat. Bank of Fort Collins v. Insurance Co. of North America,* No. C–3603 Civil, June 5, 1972 (unreported memorandum decision by Chief Judge Alfred A. Arraj, D.Colo.). There, as here, an extortion scheme was directed against the bank president whose wife and daughter were kidnapped; pursuant to the demands of the extortionist the bank president took a large sum of money from the bank and delivered it to a designated "drop site" from which the money was thereafter taken, presumably by the extortionist. The insurance policy in that case provided for coverage from criminal activity of the same description as our policy while the "Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere * * * ." The insurer denied coverage alleging that the loss took place at the drop site and thus did not occur within the premises. The Court rejected this argument by stating:

" ' * * * We find this argument unpersuasive, because under the agreed facts the thief had effectively asserted control over the funds as of the time that Farnham (the bank president) decided to comply with the instructions. * * *

" ' * * * Rather, it seems obvious to us that once having determined the threat was viable and compliance called for, Farnham became an unwilling agent of the thief in effectuating the actual removal. Consequently, we find that the loss occurred at the moment Farnham took possession of the money with the purpose of depriving the bank of it.' "

A second case is by the *Supreme Court of Minnesota, Northwest Airlines, Inc. v. Globe Indemnity Company,* 225 N.W.2d 831 (1975). In that case a plane hijacker was given $200,000.00 by the Airline delivering it to a stewardess who brought it aboard the hijacked plane. In denying a contention that the wrongful taking did not occur "within the premises" as defined in the policy, the Court quoted the above language from the Fort Collins case; it also noted that the policy was in the nature of a blanket or all-risk policy and said that, "mere unforseeability of the manner in which the loss was sustained will not per se constitute grounds for the insurer to deny coverage. * * * "

Another extortion case, very much in point here, is *Bank of Dade v. Fidelity and Deposit Company of Maryland,* 483 F.2d 735 (5th Cir.1973). That case is virtually identical to the Fort Collins case quoted from above, and it approved of the rationale of the Fort Collins case in reaching a similar holding. In the case before us, we too follow that rationale and hold that the loss occurred on the premises within the meaning of the insuring bond. As noted by the Supreme Court of Minnesota, the coverage should not be denied because of the manner of the taking from the premises if in fact it was a covered taking. Here, as a result of the extortion, the money was removed from the premises—it was on the premises and went from the premises to the extortionist. Extortion is covered by the policy; and by the very nature of that crime it would not be expected that the extortionist would come on the premises and himself physically remove the money.

The trial Court determined that the conduct of the unknown parties constituted criminal activity directed at the First State Bank. The Appellant urges that the activity was directed at Mr. Dean, and that he acted for his own personal benefit and not for that of the bank in giving up the $40,-

000.00 to such unknown persons. The stipulated facts and the inferences drawn from them support the trial Court's conclusion that the criminal activity was directed at the bank. Mrs. Dean testified that her assailant stated, "This is a bank robbery. We are going down to the bank."; this was a stipulated fact, and there was further stipulation that the extortionist called Mr. Dean at the bank, initially demanding $100,000.00 in small bills, but reduced the demand to $50,000.00; the inference is that the activity was directed at a bank, an entity which would have such large amounts of money in small bills. Also, the act was perpetrated at a time when the bank was open and while the president was at the bank. Further, the president was given only ten minutes to raise that amount in that form and proceed to a telephone. From those facts, the implications are that the activity was directed at the bank.

The bank is the entity covered by the bond; it is a corporation, bloodless, without emotion, incapable of fear from bodily harm or criminal violence; even as a corporation can act only through its officers and employees, conversely, it can only be the victim of extortion through its officers and employees. The enumerated coverage for robbery, hold-up, and the admitted coverage for extortion, could only occur or intend to occur as regards the human beings involved. We are unable to accept the argument that the bank had no coverage because the human being involved was acting for himself. Either a human being had to be involved or the quoted coverage of the policy means nothing. We fail to see how a bloodless, heartless, corporate entity, a creature of fiction, could be forced to act through an emotion or fear of bodily harm or other criminal violence. Why would an entity incapable of fear, and incapable of suffering bodily harm, enter into a contract for the protection thereof? Such was not the intention of the parties entering into this contract. We hold that the activity was directed at the bank and that there was coverage for the action taken here by the bank's president. By the very nature of extortion, it could only work on a human being and a human being would have to make the decision. Under such circumstances the trial Court was correct in denying any recovery over against the bank president.

The judgment of the trial Court is affirmed.